528 So.2d 589 (1988)
Betty Lou BUFKIN, Plaintiff-Appellant,
v.
MID-AMERICAN INDEMNITY COMPANY, Defendant-Appellee.
Jimmy Dale SIMS, Plaintiff-Appellant,
v.
MID-AMERICAN INDEMNITY COMPANY, Defendant-Appellee.
Nos. 19451-CA, 19452-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
*591 David A. Rothell, Shreveport, for plaintiffs-appellants.
Rogers and White by David L. White, Bossier City, for defendant-appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The plaintiffs, Betty Lou Bufkin and Jimmy Dale Sims, appeal the trial court judgment denying their claim for damages for personal injuries they sustained in an automobile accident. We reverse.
These two consolidated cases arise out of a one-vehicle accident that occurred on an unpaved road in DeSoto Parish. On December 7, 1986, the plaintiffs were guest passengers in a vehicle owned and operated by Mrs. Bufkin's husband, Walter. The plaintiffs were injured when the car left the road and collided with a tree. They brought suit against Mid-American Indemnity Company, Mr. Bufkin's liability insurer, alleging that the accident was caused by the act of Mr. Bufkin in operating the vehicle at an excessive rate of speed and by his failure to maintain control and keep a proper lookout. The defendant's answer contended that the plaintiffs had assumed the risk of riding with an intoxicated driver.
The accident occurred at a curve in the road. It had been raining that day and for several days prior to the day of the accident. As a result, the dirt and gravel road was muddy and slick. At the trial, the plaintiffs testified that just prior to the crash, they met an automobile traveling in the opposite direction and partially in their lane of travel. According to the plaintiffs, Mr. Bufkin had to swerve to avoid hitting the automobile, and he was unable to regain control before hitting the tree. Although the trooper was able to locate the tire tracks left by the Bufkin vehicle, he was unable to locate tracks he could attribute to the other vehicle, nor was he able to locate the other vehicle.
The trooper testified that when he arrived at the scene, Bufkin appeared to be intoxicated. His eyes were bloodshot, his speech was slurred, and the odor of alcohol on his breath was detectable from a normal talking distance. Bufkin admitted to the trooper that he had had a few beers. Because Bufkin had a pronounced limp, Trooper Wood could not determine whether Bufkin's consumption of alcohol affected his balance; therefore, he did not administer a field sobriety test. Based on the symptoms exhibited by Bufkin, the trooper determined that he was intoxicated and decided to arrest him. He advised the ambulance personnel who took Bufkin to the hospital that Bufkin was not to be released from the hospital because he was under arrest. Trooper Wood asked the troop to send a blood alcohol technician to the hospital. At the hospital, Trooper Wood informed Bufkin that he was under arrest and read to him the rights form pertaining to the chemical test for intoxication. Bufkin signed the form and a blood sample was taken from him. The chemist who analyzed the sample testified as to the results.
Based on this evidence, the trial judge found that Bufkin was intoxicated, that his intoxication caused the accident, and that the plaintiffs knew or should have known of his condition, and were thus barred from recovering for their injuries.
*592 The plaintiffs' single assignment of error presents two issues: (1) Did the defendant lay a proper foundation for the admission of the results of the blood alcohol test? (2) Did the plaintiffs assume the risk of riding with an intoxicated driver?

THE BLOOD ALCOHOL TEST
Although the record is not clear on this point, it appears that the blood test was administered under LSA-R.S. 32:661, et seq. The plaintiffs first argue in their brief that the results of the test administered under this statute are not admissible in a civil proceeding. The trial judge correctly determined that the results of a blood alcohol test are admissible in civil proceedings. Parker v. Kroger's, Inc., 394 So.2d 1178 (La.1981); Whittington v. American Oil Company, (AMOCO), 474 So.2d 41 (La.App. 4th Cir.1985), writ denied, 477 So.2d 693 (La.1985); Champagne v. McDonald, 355 So.2d 1335 (La.App. 3rd Cir.1978).
The plaintiffs' principal argument on the issue of the admissibility of the results of the blood test is that the defendant did not lay a proper foundation for admissibility. Specifically, the person who drew the blood sample, Gary Hesser, did not testify, an omission which the plaintiffs claim constitutes a break in the chain of custody.
The purpose of the chain of custody rule is to assure the integrity of the evidence, i.e., to prevent the evidence from being tampered with or from being lost. Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th Cir.1985), writ denied, 464 So.2d 1386 (La. 1985), cert. denied, 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985). Accordingly, before test results, including blood alcohol test results, can be admitted in a civil or a criminal proceeding, the party seeking to introduce the results must lay a proper foundation by "connecting the specimen with its source, showing that it was properly labeled and preserved, properly transported for analysis, and properly taken by an authorized person, properly tested." Swanson v. Estate of Augusta, 403 So.2d 118, 124 (La.App. 4th Cir.1981), writ denied, 407 So.2d 732 (La.1981).
In the present case, Trooper Wood stated that a blood technician was requested to come to the hospital to take a sample of Mr. Bufkin's blood. Trooper Wood did not testify as to the identity of the technician who drew Mr. Bufkin's blood nor did he testify that he witnessed the blood being drawn. He simply stated that "we drew blood."
James R. Goebel, a forensic chemist with the Northwest Louisiana Crime Lab, testified that on Tuesday, December 9, 1986, Gary Hesser personally delivered to him a blood sample labeled with Walter Bufkin's name. Goebel ran the blood alcohol test on this sample.[1]
Goebel testified generally about the procedure followed by Hesser in drawing blood. Geobel stated that when Hesser draws blood, he places a sticker with the following information on the tube of blood: the donee's name, the police officer's initials, the date and the time the blood was drawn, and the drawer's initials. The technician then takes the sample to his home and keeps it refrigerated. If the blood was drawn on a weekend, as this sample was, it is kept until Monday or Tuesday morning because the tests are not run until Tuesday. The sample is then brought to the lab where Goebel or one of the other chemists tests the sample.
This evidence establishes only the following facts: (A) Blood was drawn from Bufkin by an unknown technician on December 7, 1986. (B) A vial labeled with Bufkin's name was tendered to the crime lab on December 9 by the technician Hesser. Under these circumstances, we determine that the record is insufficient to establish that the blood tested was that of Bufkin and thus hold the trial court erred in determining that a proper foundation existed for the introduction of the blood test results. See and compare Richardson v. Continental Insurance Co., 468 So.2d 675 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1304 (La. 1985); Holmes v. Christopher, 435 So.2d *593 1022 (La.App. 4th Cir.1983), writs denied, 440 So.2d 723 (La.1983), 440 So.2d 724 (La. 1983), and 440 So.2d 765 (La.1983); Swanson v. Estate of Augusta, supra; Lapoint v. Breaux, 395 So.2d 1377 (La.App. 1st Cir.1981), writ denied, 399 So.2d 611 (La. 1981); and Pearce v. Gunter, 238 So.2d 534 (La.App. 3rd Cir.1970) (results of tests were not admissible), with Hutson v. Madison Parish Police Jury, 496 So.2d 360 (La. App. 2d Cir.1986), writs denied, 498 So.2d 758 (La.1986) and 500 So.2d 416 (La.1987); Ryan v. State, 477 So.2d 110 (La.App. 1st Cir.1985), writ denied, 478 So.2d 136 (La. 1985); and Young v. All American Assurance Company, 243 So.2d 894 (La.App. 3rd Cir.1971), writ refused, 258 La. 349, 246 So.2d 197 (La.1971), (results of blood tests were admissible).

OTHER EVIDENCE OF INTOXICATION
Despite the fact that the results of the blood alcohol test are not admissible, we still find that there is sufficient evidence in the record to establish that Mr. Bufkin was intoxicated. Bufkin admitted to the trooper that he had had "a few beers" that day. The trooper testified that the smell of alcohol was easily discernible on Bufkin's breath from a normal talking distance. Bufkin's eyes were bloodshot and his speech was slurred. In the words of this experienced trooper, Mr. Bufkin's intoxication was "plainly obviously; clearly obvious." (R.85)
The trooper further testified that the trunk of the vehicle was open when he arrived and he observed therein some beer and other items. He testified that most of the beer cans had blood on them and were wet and muddy. He stated that this circumstance meant that the cans had been handled after the accident by persons involved in the accident, indicating that the beer was in the passenger compartment of the vehicle at the time of the accident. Additionally, as will be related in more detail subsequently, there is evidence that Mr. Bufkin had at least five beers beginning at 4:00 that morning when he awoke. On the basis of this evidence and without consideration of the test result, we conclude that Bufkin was intoxicated.
We also conclude that his intoxication was a significant cause of the accident. While the plaintiffs testified that Bufkin ran off the road because he was taking evasive action in an effort to avoid being hit by an oncoming car that was partially in his lane, the evidence indicates that the other vehicle did not exist. As stated previously, the road on which the accident occurred was a dirt and gravel road. Because it had been raining for several days prior to the accident, the road was quite muddy. The Bufkin car left clearly identifiable tire tracks. While the trooper had no trouble identifying these marks, he could not locate another set of marks which were as fresh and which could be attributed to another vehicle traveling in the manner described by the plaintiffs. The trooper testified that Bufkin was going too fast for the road conditions and that had he been driving more slowly, he could have safely negotiated the curve. While it is the plaintiffs' argument that the accident was caused by Mr. Bufkin's fast driving and not by his intoxication, we believe that there is ample evidence in the record to support the conclusion that a significant causal factor in the wreck was his intoxication.

ASSUMPTION OF THE RISK
We thus agree with the trial court that the plaintiffs knew or should have known that they were riding with a person too intoxicated to properly operate a motor vehiclein other words, they "assumed the risk" of riding with Bufkin. However, this action is not a total bar to their recovery. The Louisiana Supreme Court has recently determined that the doctrine of assumption of the risk has been subsumed by Louisiana's comparative fault doctrine. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La. 1988).
In Murray, the Supreme Court thoroughly discussed the doctrine of assumption of the risk. The court stated that in Louisiana assumption of the risk cases fall into three basic categories: (1) those in *594 which "the plaintiff has expressly agreed with the defendant, in writing, to accept the risk of injury"; (2) those in which the plaintiff has "participated in certain activities, or placed [himself] in situations which involve inherent and well known risks"; and (3) those in which the plaintiff "disregarded a risk created by the defendant's fault." Murray, at 1131. The situation in the present case clearly falls within the last category. The Supreme Court stated that in this category of cases, "it is a fiction to say that plaintiffs ... actually consented to, or assumed the risk of injury. It is much more accurate to conclude that such plaintiffs negligently disregarded a known risk or, in other words, were contributorily negligent." Murray, at 1131.
LSA-C.C. Art. 2323 substituted comparative negligence for contributory negligence. Because the continued use of assumption of the risk as a total bar to a plaintiff's recovery in this type of case is inconsistent with Art. 2323's elimination of contributory negligence as a bar to recovery, the Supreme Court held that assumption of the risk is no longer a bar to the plaintiff's recovery. In fact, the Supreme Court recommends that lawyers and litigants no longer use the term "assumption of the risk" to describe the plaintiff's conduct.
In the present case, both Mrs. Bufkin and Mr. Sims knew that Mr. Bufkin had been drinking, knew or should have known that he was intoxicated, and knew or should have known that it was dangerous to ride with an intoxicated driver. Mrs. Bufkin testified that she saw him drink at least five beers beginning at 4:00 o'clock that morning when they awoke. She testified that he drank the beers over approximately one and a half hours. Mr. Sims testified that when he arrived at the Bufkin residence shortly before 1:00 p.m. on the day of the accident, he could smell alcohol on Bufkin's breath when he stood about an arm's length away from Bufkin. These facts are sufficient to support the trial court finding that the plaintiffs were aware of Bufkin's intoxication. Under Murray, supra, this awareness of the risk created by Bufkin's conduct merely reduces plaintiffs' recovery.

DAMAGES
A court of appeal may award damages when the trier of fact fails to do so and when the record contains sufficient proof of damages. Fussell v. Louisiana Business College of Monroe, 519 So.2d 384 (La.App. 2d Cir.1988).
While the medical evidence with respect to the 49-year-old Mrs. Bufkin is meager at best, it is clear she did receive certain injuries. She sustained a laceration over her right eye which required eighteen inner and outer stitches. She also fractured her right metacarpal joint (bone in right little finger adjacent to the hand). While there is an implication in her testimony that she may have broken her ulna, the medical evidence does not substantiate that injury. She also experienced soreness in the upper thoracic spine. The medical records reveal that eleven days after the accident, the facial laceration was healing well and the fracture appeared to be healing satisfactorily. She testified that she underwent treatment on four or five occasions and was still receiving therapy at the time of trial. Under these circumstances we believe that an award of $4,500 to Mrs. Bufkin for her pain and suffering will do substantial justice to the parties. There was no evidence with respect to any other damages that she may have suffered.
There is no medical evidence reflecting injuries which Mr. Sims may have suffered as he did not attend a doctor after the accident because he did not think it was necessary. He testified that he injured his right hand, left leg, back and shoulder and that he sustained cuts on his forehead. We find that he is entitled to a general damage award of $350 for these injuries. Hawkins v. Gilfoil, 483 So.2d 1082 (La.App. 2d Cir. 1986); Palmer v. Stokes, 444 So.2d 213 (La.App. 1st Cir.1983).
Finally, it is necessary to consider the extent to which these awards should be reduced by the measure of the plaintiffs' *595 fault.[2] Mrs. Bufkin conceded that the Mr. Bufkin awoke at 4:00 a.m. and drank five beers within a relatively short period of time. As his wife, she was obviously aware of the intoxicated state which the trooper so clearly witnessed when she entered the vehicle with him shortly before the accident. Under these circumstances, we determine that her fault should be assessed at forty (40%) percent. See and compare Daugherty v. Casualty Reciprocal Exchange Insurance Company, 522 So.2d 1323 (La.App. 2d Cir.1988).
Mr. Sims, in the absence of the blood alcohol test results, cannot be said to have been as aware as Mrs. Bufkin of the extent of Mr. Bufkin's intoxication since he arrived at the residence shortly before the accident. As a friend of Mr. Bufkin's of about one year, he should have been able to judge Mr. Bufkin's intoxication to a certain extent, but perhaps less than that of Mr. Bufkin's wife and an experienced trooper. Under these circumstances, we will assess his fault at twenty-five (25%) percent.

DECREE
For the reasons aforesaid, the judgment of the trial court is reversed, and there will be judgment herein as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, BETTY LOU BUFKIN and against the defendant, MID-AMERICAN INDEMNITY COMPANY, in the full sum of TWO THOUSAND, SEVEN HUNDRED and NO/100 ($2,700.00) DOLLARS (representing total damages of $4,500 reduced by BETTY LOU BUFKIN's degree of fault of forty (40%) percent), together with legal interest thereon from the date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, JIMMY DALE SIMS and against the defendant, MID-AMERICAN INDEMNITY COMPANY in the full sum of TWO HUNDRED SIXTY-TWO and 50/100 ($262.50) DOLLARS (representing total damages of $350.00 reduced by JIMMY DALE SIMS' degree of fault of twenty-five (25%) percent), together with legal interest thereon from judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs herein are assessed against the defendant.
REVERSED AND RENDERED.
NOTES
[1] The alcohol level of this blood sample was .35.
[2] Were we able to consider the blood alcohol test asserted to be that of Mr. Bufkin which showed a result of .35 at the time of testing and .40 at the time of the accident, the reductions would be greater.