SCHOTT, Chief Judge.
These are appeals by the Louisiana State Racing Commission from judgments of the Civil District Court for the Parish of Orleans remanding the cases to the Commission for additional evidence after the Commission suspended the licenses of horse trainers Dennis W. Dettwiller and Heinz Y. Miller. Dettwiller and Miller have answered the appeals seeking a final reversal of the Commission’s suspensions and a judgment for attorney fees. The issue is whether the evidence is sufficient to support the Commission’s actions in the light of previous decisions of this court.
On April 27, 1985, Dettwiller was the trainer of a horse which finished first in a race at Jefferson Downs. A urine sample, taken from the horse after the race, was allegedly positive for a prohibited substance, Apomorphine. After a hearing on June 27, 1985, the Commission found that Dettwiller had violated the Rules of Racing and suspended his license for ninety days. Upon his petition for judicial review, the trial court on April 16, 1986, reversed the Commission’s decision and remanded the case to the Commission for additional evidence. On appeal by the Commission, this court affirmed the judgment of the District Court. Laborde v. Louisiana State Racing Commission, 506 So.2d 634 (La.App. 4th Cir.1987).
On June 6, 1985, Miller was the trainer of a horse which finished first in a race at Jefferson Downs and on June 12, 1985, he *596 was the trainer of another horse which finished second in a race. Urine samples taken from the horses after the races were allegedly positive for Apomorphine. After a hearing on August 1, 1985, the Commission found that Miller had violated the Rules of Racing and suspended his license for six months and imposed a fine of $500. Upon his petition for judicial review, the trial court on April 16, 1986, reversed the Commission’s decision and remanded the case to the Commission for additional evidence. On appeal by the Commission, this court affirmed the judgment of the District Court. Miller v. Louisiana State Racing Commission, 508 So.2d 585 (La.App. 4th Cir.1987).
On August 28, 1987, the Commission held a second hearing for Dettwiller and immediately thereafter a second hearing for Miller. Much of the testimony in Dett-willer’s case was incorporated by reference in Miller's case. The commission again suspended the licenses and Dettwiller and Miller again petitioned the Civil District Court for judicial review. Again the trial court reversed the Commission’s decisions and remanded the case to the Commission for additional evidence. The present appeal is from these judgments.
This court’s previous decisions in both cases were based upon Hall v. Louisiana State Racing Commission, 505 So.2d 744 (La.App. 4th Cir.1987), wherein the court held that the Commission could not carry its burden of proof in a disciplinary case against a trainer by merely offering the stewards’ findings and chemists’ reports but that the chemist should be produced by the Commission to provide a foundation for the report and to be available for cross examination. This court’s previous decisions with respect to Dettwiller and Miller simply affirm the judgments of the district court to remand the cases for additional evidence but these reported decisions do not explain the nature of the evidence to be taken. In order to discover this, we must refer to the trial court’s reasons for judgment in each case which was incorporated by reference in each judgment.
In Dettwiller’s case, the trial court stated that he was entitled to attack the method and procedure used to obtain the urine sample and “to pursue the evidence of any confusion, infection, contamination, or irregularity during the testing process.” In Miller’s case, the court found that the Commission failed to lay a foundation for the introduction of the laboratory report on the urine samples by calling the chemist who made the report as a witness and by connecting the specimen tested with its source. This was the posture of the cases when they returned to the Commission the second time and it is these second hearings which the trial court again found deficient and which are now before us for review.
This time the trial court’s judgments and reasons for judgments are the same in both cases.
The judgments both remand the cases to the Commission:
“_ for the purpose of receiving evidence with respect to whether the method and procedure used to obtain a urine sample of the subject animal adequately insured that no prior tainted sample of urine may have affected the positive urine sample forming the underlying basis of these proceedings.”
The court’s reasons for judgment in pertinent part are as follows:
On a review of this record, that which concerns the Court most is whether the method and procedure used to gather the urine sample adequately protected the petitioner from having another prior urine sample taint the results; that is, were the cleaning methods and materials used to test the urine sample at issue in the present case sufficiently cleansed and sterilized to insure that a prior tainted sample did not taint the sample of petitioner’s horse’s urine.
At the hearings, the commission again offered its files on the cases including the chemists’ reports on the urine samples, but this time the Commission called the chemist who made the reports for the state and the veterinarian in charge of the testing barn where the urine samples were taken from the horses. The chemist testi *597 fied as to how she made the test and was subjected to cross examination by counsel for the trainers. Thus, the Hall requirement was clearly met. She testified as to numbers on the samples which she tested. The veterinarian testified that whenever a specimen was drawn a split was given to the trainer who signed a receipt and designated the laboratory where the split was to be sent. In the record are copies of each receipt showing the number of the race, the day of the racing meet, the name of the horse, owner, and trainer the signatures of the specimen collectors and the trainer and the number which corresponds to the number given by the chemist.
As pointed out above, when the Miller case was previously remanded the trial court required evidence connecting the specimen tested with its source. Dettwiller and Miller now argue in this court that the evidence summarized above is insufficient to establish this chain of evidence. In support thereof, they cite a statement by the chemist that “some years' ago” a test was made on a urine specimen supposedly from a horse that was actually human urine. We are not persuaded that this ridiculous episode which happened some years previously discredits the procedure and testimony before us, to the effect that each specimen was taken from the horse and at the time and on the date in question, that it was placed in a sealed bag in the presence of the trainer, that it was assigned a number in his presence, that he signed the numbered receipt, and that numbered, sealed bag was the one the chemist found to be positive for apomorphine. Significantly, even the reasons for the judgment now on appeal do not seem to question the chain of evidence. In short, the Commission established the chain by an overwhelming preponderance of the evidence.
Dettwiller and Miller argue that their horses could not have been under the influence of apomorphine when the samples were taken because they were not exhibiting the usual symptoms associated with this drug such as snorting and grinding of teeth. They proved these symptoms by an article they filed in evidence by Dr. Thomas Tobin entitled “Drugs and The Performance Horse” and they established by their own testimony that the horses did not exhibit these symptoms at the time the specimens were taken. From our reading of the article, we do not find that the reactions or symptoms described by the trainers are always, necessarily present when a horse has apomorphine in his system. For instance, the article says: “On apomorphine horses may get extremely excited and apprehensive;” (emphasis supplied) and: “While horses, for reasons that are not clear, do not respond reliably to apomorphine, when they do respond the effect is dramatic.” The article discusses the “apomorphine snort” as a characteristic of a horse dosed with the drug, but we do not read it to mean that this is always present and noticeable regardless of the circumstances. In short, this evidence was not sufficient to rebut the Commission’s evidence that these urine specimens were positive for apomorphine.
The issue which prompted the trial court to remand the case once again was with respect to the possibility that the specimens were tainted by unclean receptacles used to catch the specimens. The Commission argues in effect that the trial court committed manifest error in this finding. When a specimen of urine is taken from a horse a funnel is placed over a plastic bag. After a sufficient amount of urine is in the bag a thermometer is used to measure the temperature of the urine. At the hearing, Dettwiller and Miller attacked the manner of cleaning the funnels and thermometers and the integrity of the bag. The evidence shows that the funnels are cleaned after each use with scalding water and the thermometer is placed in a vial of water. The veterinarians who testified at the hearing were satisfied that this was sufficient to prevent these objects from being tainted. One stated that scalding water would be adequate to remove the urine from the previous horse and that the dilution of the urine of the previous horse by the water into which the thermometer was placed would effectively prevent a false reading on the next horse. He also stated that *598 insufficient cleansing would necessarily cause the specimens taken from two consecutive horses to be positive and this never happened. Finally, evidence shows that the bags are new and sealed when opened to receive specimens. We have concluded that this evidence was sufficient to establish that the specimens were not tainted because of unclean objects used to take them and the trial court’s findings and Dettwiller’s and Miller’s arguments-to the contrary are based upon sheer speculation.
Accordingly, the judgment of the trial court is reversed and set aside and there is judgment in favor of the Louisiana State Racing Commission and against Dennis W. Dettwiller and Heinz Y. Miller dismissing their petition for judicial review and reinstating the suspensions and fine imposed by the Commission. All costs are assessed against Dettwiller and Miller.
REVERSED AND RENDERED.