569 So.2d 58 (1990)
Anthony LABELLA, et al.
v.
LOUISIANA STATE RACING COMMISSION.
No. 90-CA-0201.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
Writ Denied January 4, 1991.
*59 William J. Guste, Jr., Atty. Gen., Robert A. Barnett, Asst. Atty. Gen., John E. Jackson, Jr., Asst. Atty. Gen., New Orleans, for defendant/appellee.
Salvador Anzelmo, Thomas W. Milliner, New Orleans, for plaintiff/appellant.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
This matter is before us on an appeal of the trial court judgment which affirms the decision of the Louisiana State Racing Commission to suspend the license of trainer Dale P. Angelle for one year.
The race horse "Clem Tucker," trained by Angelle, won the eleventh race at New Evangeline Downs on August 2, 1987. After the race a urine sample was taken and forwarded to the State Chemist for testing. The results were positive for the drug Hydromorphone (Dilaudid). Thereafter, on September 1, 1987 the stewards at New Evangeline Downs issued order no. 155 which suspended Angelle for the remainder of the New Evangeline Downs meet, plus ten days. The matter was then referred to the Commission.
The Commission held a hearing on December 4, 1987 and subsequently suspended Angelle's license for one year. An appeal of that decision to the district court was unsuccessful. Angelle now perfects the instant appeal.[1]
Angelle raises four assignments of error which we address individually.
First, Angelle argues that the Commission failed to introduce demonstrative or documentary evidence to support the chemist's opinion as to his positive findings of the presence of a drug in "Clem Tucker's" urine. In support, he cites LAC 35:1785 which provides:
"In reporting to the state steward that a test of a specimen was positive for a prohibited substance, the commission chemist shall present documentary or demonstrative evidence acceptable in the scientific community and admissible in court in support of his professional opinion as to the positive finding."
The state chemist's report, introduced into evidence, provides:
"Dear Ms. McGinity,
This is to inform you that sample # 3506 E 4836 was found to be positive for the drug Hydromorphone (Dilaudid) a potent narcotic/analgesic, in violation of the Rules of Racing.

*60 The presence of this compound was confirmed by Immuno-fluoresence Assay, before and after extraction, Thin Layer Chromatography and analysis by Gas Chromatography/Mass Spectrometry.
 Sincerely,
 s/Steven A Barker, PhD"
In addition, Dr. Barker testified at the hearing before the Commission. He explained the testing methods used and testified that those methods follow the "... Good Laboratory Practices Act in terms of quality control, quality insurance, analysis of standards, displaying proper tuning of the instrumentation and the interpretation of data."
The chemist's report is certainly documentary evidence properly admissible in court. It contains the test results, as well as the analytical methods by which they were confirmed. Angelle stresses, however, that it is insufficient to satisfy the requirements of LAC 35:1785 and therefore should not have been considered by the stewards.
Arguably, the report, standing alone, may not satisfy the technical aspects of what is required of the chemist when he renders a report to the stewards. However we need not make a definitive statement as to that issue since we conclude that the report, when coupled with Dr. Barker's testimony before the commission, satisfies the statute's requirements. Angelle was not prejudiced by the report since the stewards' ruling was suspended pending a hearing by the commission. We find no merit in this argument.
Angelle next argues that the Commission erred in basing its decision on an in globo introduction of evidence without foundation or opportunity for cross examination. In support, he relies on this Court's decision in Hall v. Louisiana State Racing Commission, 505 So.2d 744 (La. App. 4th Cir.1987). We disagree.
Hall is easily distinguishable from the instant case. There, "the Commission did not swear in any witnesses, but based its decision on the documentary evidence submitted." Id. at 746. Here, the file introduced into evidence was supported by the testimony of the state steward, two state chemists, and the test barn veterinarian. A proper foundation was laid, and both substantive and procedural due process have been satisfied.
Angelle next argues that the integrity of the crucial evidence, the urine sample, was not protected in the chain of custody, and therefore the chemist's test results should not have been introduced in evidence.
After the race the samples were collected and placed in vials. They were then quick frozen in liquid nitrogen and placed in a freezer to which only the veterinarian had access. The vials were heat sealed with a seal which is described as "tamper proof." Embossed on that seal is the state seal. There was a double identification tag identifying the specimen. One portion of the tag remained with the specimen, and the other was placed in a sealed envelope for delivery to the Commission. The sample was then packed in a styrofoam box which was sealed with security seals and initialed by the track veterinarian. That box was then placed in a cardboard box which was also sealed. The box was then labelled "priority one" and was delivered to the Greyhound Bus lines for transportation to Louisiana State University. Priority one means that the box is handled only by the bus driver and is not placed with other packages.
At the bus station the sample was receipted for in the normal course of business, placed on a bus and transported to Baton Rouge. Once in Baton Rouge, the sample was taken by courier to the Louisiana State Veterinarian's lab. There, Doctor Dorian Ranus signed a receipt indicating delivery of the sample.
Angelle complains that there is no testimony or other evidence indicating receipt by the bus driver in Lafayette, nor is there evidence of receipt by anyone at the Baton Rouge bus station, or by the courier who delivered it to the lab. In support he quotes from the Second Circuit case of Bufkin v. Mid-American Indemnity Co., 528 So.2d 589 (La.App. 2d Cir.1988).
*61 In Bufkin the court ruled the results of a blood-alcohol test inadmissible because the identity of the person who drew the blood was unknown. There was no evidence to link the tested blood with the defendant. In so ruling, the Bufkin court recognized that the purpose of the chain of custody rule is to preserve the integrity of the evidence, i.e. to assure that it has not been tampered with or lost. We do not disagree with this reasoning. However, Bufkin is not applicable to the facts of the instant case.
Angelle's complaint is that the identity of the receiving party at the Lafayette bus station, the bus driver who drove the bus to Baton Rouge, the receiving party in the Baton Rouge bus station, and the delivering courier are all unknown. Thus, he asserts, the "break" in the chain began in Lafayette and continued until the specimen reached the lab in Baton Rouge. Consequently, he urges that the evidence was improperly introduced.
This argument is without merit. Angelle overlooks the fact that the specimen was sealed with security seals and initialed by the veterinarian at the track in Lafayette. It was received in the same condition at the lab in Baton Rouge. The method of transportation was by a recognized interstate carrier, Greyhound Bus Lines. There can be no doubt that the package received at the lab was the same one sealed in Lafayette. This is quite different from Bufkin where the source of the blood sample was questionable because of the unknown identity of the person drawing the blood. There is absolutely no evidence in the record to suggest that the sealed container was tampered with between Lafayette and Baton Rouge.
At least in a civil case the chain of custody rule does not require a twenty four hour vigilance of the evidence. It requires that its integrity be preserved, and that it be protected from being tampered with or lost. We find no merit to this argument. Id. at 592.
Finally Angelle argues that there is no evidence which proves that the performance of the horse was or could have been affected by the drug found in the urine of "Clem Tucker." In support, he cites pertinent provisions of LAC 35:1737 which state "... if the stewards conclude that the drug contained in the sample could have produced analgesia in, stimulated or depressed the horse ..." then a violation occurs.
Doctors Houeye and Short, veterinarians for the Commission, both testified that the drug hydromorphone is a stimulant. Doctor Short said it is classified as a Schedule 2 narcotic similar to morphine except that it is more potent. It affects the central nervous system and could affect the performance of the horse. There is no evidence to the contrary.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Initially, two other trainers, Bobby Granger and Anthony LaBella, were charged with Angelle. This appeal only involves Angelle. However, the parties stipulated that the transcript of Granger's hearing before the Commission on December 4th, 1987 is deemed to be the transcript of Angelle's hearing.