577 So.2d 1031 (1991)
Steven E. SEGURA
v.
LOUISIANA STATE RACING COMMISSION.
No. 90-CA-0676.
Court of Appeal of Louisiana, Fourth Circuit.
March 28, 1991.
Salvador Anzelmo, Thomas W. Milliner, New Orleans, for plaintiff-appellant Steven E. Segura.
William J. Guste, Jr., Atty. Gen., Robert A. Barnett, Asst. Atty. Gen., John E. Jackson, Jr., Asst. Atty. Gen., New Orleans, for defendant-appellee La. State Racing Com'n.
Before KLEES, CIACCIO and LOBRANO, JJ.
KLEES, Judge.
On April 23, 1988, the race horse, "Bold Suba" finished first in the second race at The New Evangeline Downs in Lafayette, Louisiana. Appellant, Steve Segura, was the trainer in charge of Bold Suba. Immediately following the race, a routine urine specimen was taken from the horse and *1032 forwarded to the State chemist for the Louisiana State Racing Commission ("Commission"). Chemical analysis revealed that morphine was present in the urine.
A Stewards Hearing was held on May 8, 1988. In accordance with their findings, the Stewards suspended Segura's license for the balance of the race meet plus ten days. The matter was then referred to the Commission. Segura suspensively appealed and, within the requisite time frame, requested a split sample reanalysis in accordance with his rights under the Louisiana Administrative Code ("LAC"). Thereafter, the specimen was shipped to the referee laboratory in Ohio where, once again, the presence of morphine was confirmed.
On June 30, 1988, the Commission held its hearing on the matter. After listening to testimony, the Commission upheld the Steward's ruling and ordered suspension of Segura's license for three years plus a $5,000.00 fine. Subsequently, Segura requested judicial review by the district court. In due course, the district court affirmed the Commission's decision and Segura perfected this appeal.
Appellant makes several assignments of error. First, he contends that the State chemist's report must be accompanied by other admissible documentary or demonstrative evidence in order to satisfy the requirements of LAC 35:1785. The report, standing alone, is merely a conclusory finding without supporting evidence. Absent this supporting evidence, the Commission proceedings were void ab initio. Therefore, its decision should be reversed and set aside.
Title 35, Section 1785 of the LAC provides that, in reporting test results which are positive for a prohibited substance, "the Commission chemist shall present documentary or demonstrative evidence acceptable in the scientific community and admissible in court in support of his professional opinion as to the positive finding." LAC 35:1785 (emphasis added). In other words, when the State chemist reports his test results to the Stewards, his professional opinion must be supported by admissible documentary evidence which would be acceptable in the scientific community.
In this case, the State chemist's report consisted of a form letter which stated in pertinent part:
This is to inform you that sample number 8125 E0508 has been confirmed as positive for the drug morphine in violation of the Rules of Racing, LSRC.
The presence of this drug in horse urine sample E0508 was indicated by immunoassay techniques and was confirmed by gas chromatography/mass spectrometry.
 Sincerely,
 /s/ Steven A. Barker, Ph.D.
 Associate Professor and Director
 Analytical Systems Laboratories
Dr. Barker's letter is in fact "documentary evidence" in support of his opinion that morphine was present in the urine specimen. The letter was presented to the Commission at its hearing of Appellant's case. It shows the test results reached and delineates the scientific methods used to detect the prohibited substance. Furthermore, Dr. Barker testified before the Commission as to the precise methods used in determining whether Bold Suba's urine specimen contained any illegal substances.
In LaBella v. Louisiana State Racing Commission, 569 So.2d 58, 59-60 (La.App. 4th Cir.1990), this Court concluded that, although the report standing alone might not be sufficient, "when coupled with Dr. Barker's testimony before the Commission, [it] satisfies the statute's requirements." Id. (emphasis ours). The facts in LaBella were virtually identical to those of this case. In light of that decision and the foregoing facts, we find Appellant's first argument without merit.
Next, Appellant contends that the integrity of the most critical evidence in this casethe urine specimenwas not protected in the chain of custody. That is, the Commission failed to lay a proper foundation for introduction of the test results because "it failed (1) to connect the specimen taken [from Bold Suba] with the specimen placed in a vial for delivery to [the State chemist at] L.S.U.; and (2) to connect *1033 the specimen taken from [Appellant's] horse to the specimen allegedly delivered to the Louisiana State Veterinarian's Lab." (Appellant's Brief at p. 4). Absent this requisite foundation, the chemists's test results should not have been introduced into evidence.
The pertinent facts are as follows. After the race, a urine specimen was collected from Bold Suba. The test barn veterinarian, Dr. Houeye, and the specimen collector transferred the specimen from the collecting receptacle to two separate vials. This is referred to as a "split sample". One was to be sent away for immediate testing. The other was kept as a "referee" specimen in case of a dispute. Dr. Houeye then sealed the vials with an evidence seal, the split sample was quick frozen and then placed in a chest freezer. Everything but the actual collection of the specimen from the horse and subsequent transfer to vials for freezing was accomplished by the test barn veterinarian alone. At the end of the race day, Dr. Houeye transferred one of the vials from the freezer to a box for shipment. He then sealed the box and delivered it to the bus station. Thereafter, the box was delivered to the State chemist at L.S.U. in Baton Rouge.
Appellant contends that no evidence was introduced to show that the sample taken from Bold Suba on April 23, 1988 was the same one placed in vials for shipment to the State chemist. The specimen collector who allegedly took the sample was subpoenaed, but did not appear and testify at the Commission hearing. (Tr. 92). According to Appellant, this creates a presumption that the testimony would have been adverse to the Commission.
Moreover, Appellant argues that there was no evidence showing whether the specimen taken from Bold Suba at the test barn was the same specimen delivered to the State chemist at L.S.U. in Baton Rouge. (Appellant's Brief at p. 5). This complaint is based upon the unknown identities of bus station personnel in Lafayette and Baton Rouge who handled and delivered the specimen from one station to the other, and of the person(s) who transported the specimen to the chemist's laboratory and who received it there. Appellant cites Bufkin v. Mid-American Indemnity Co., 528 So.2d 589 (La.App. 2d Cir.1988), in support of this proposition. In Bufkin, the Second Circuit stated that
before test results ... can be admitted in a civil or criminal proceeding, the party seeking to introduce the results must lay a proper foundation by `connecting the specimen with its source, showing that it was properly labeled and preserved, properly transported for analysis, and properly taken by an authorized person, properly tested.'
Id. at 592 (quoting, Swanson v. Estate of Augusta, 403 So.2d 118, 124 (La.App. 4th Cir.1981), writ denied, 407 So.2d 732 (1981)).
We agree that failure of a corroborating witness to testify when available creates a presumption that his testimony would be adverse to the proponent. See, Schwab v. Galuszka, 463 So.2d 737, 742 (La.App. 4th Cir.1985). However, this "is merely one factor that must be weighed along with the other evidence." Id. The chain of custody rule is intended "to preserve the integrity of the evidence, i.e., to prevent [it] from being tampered with or ... lost." Bufkin, 528 So.2d at 592. Accord, LaBella, 569 So.2d at 61; Schwab, 463 So.2d at 742. This Court has determined that, in a civil case, twenty-four hour vigilance of the evidence is not required. LaBella, 569 So.2d at 61. What is essential is preserving the integrity of the evidence and protecting it from tampering and loss. Id. These factors must be established by a preponderance of the evidence. Laborde v. Louisiana State Racing Commission, 560 So.2d 594, 597 (La.App. 4th Cir.1990).
As noted previously, the facts of this case mirror those of LaBella, 569 So.2d 58. In LaBella, the Appellant made the same chain of custody argument. However, in that case, much more and detailed evidence was presented as to who handled the specimen and in what manner than the instant case. Nonetheless, the crucial events in the chain of custodycollection, sealing, delivery to and receipt by chemist; testing *1034 performed and analytical methods utilizedwere attested to by Dr. Houeye, the test barn veterinarian, and Dr. Barker, the State chemist. Additionally, we note that, like LaBella, Appellant herein failed to produce any positive evidence showing that Bold Suba's urine specimen was tampered with, lost, or that the specimen tested by the State chemist was not in fact the same one taken from the horse. In light of all this, we are persuaded that the Commission established by a preponderance of the evidence that there was no "break" in the chain of custody.
Appellant also complains that the Commission erred in finding him in violation of the Rules of Racing because "the evidence clearly shows that a person other than [Appellant] administered ... or caused to be administered ..." the drug morphine to Bold Suba. (Appellant's Brief at p. 6). Appellant emphasizes that the following points of evidence bolster his theory: (a) his own testimony denying that he administered, or authorized anyone else to administer, drugs to Bold Suba (Tr. 99-100); (b) report and testimony of Trooper First Class Robert Thibodeaux of the Louisiana State Racing Investigation Unit that he was unable to determine whether Appellant administered the drug or caused it to be administered to Bold Suba; (Record on Appeal, ExhibitInvestigative Report of Louisiana State Racing Investigations Unit); (c) testimony of Trooper Thibodeaux to the effect that the owners of Bold Suba were in the best position to administer anything to the horse because they were with it from the time they picked it up at the barn prior to the race, until after the urine sample was taken (Tr. 107-108); and, lastly, (d) testimony that the owners threw away a bloody syringe found in the barn where Bold Suba was stabled (Tr. 82), and that they had a disagreement with Appellant approximately one week prior to the incident giving rise to this case (Tr. 82).
The Louisiana Administrative Procedure Act, LSA-R.S. 49:964(G) sets forth the appropriate scope of review of administrative decisions. It provides in pertinent part:
G. The court may reverse or modify the decision [of the agency] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(5) Arbitrary or capricious or characterized by abuse of discretion ...; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
LSA-R.S. 49:964(G)(5) and (6). "The manifest error test [of subsection G] is used in reviewing the facts found by the agency, [whereas,] the arbitrariness test [is] used in reviewing conclusions and exercises of agency discretion." Johnson v. Odom, 536 So.2d 541, 546-47 (La.App. 1st Cir.1988) (citations omitted). The reviewing court must give due regard to credibility determinations made by the agency where the court has not observed the witnesses firsthand. LSA-R.S. 49:964(G)(6).
After reviewing the record, the district court concluded that the Commission's findings of fact and conclusions were correct. The Commission had the opportunity to view the witnesses firsthand and judge their credibility at that time. Our review of the record convinces us that the Commission's findings and conclusions were not manifestly erroneous or arbitrary in any way.
Finally, Appellant argues that the Rules of Racing are unconstitutional because only trainers (of which class Appellant is a member) are selected for prosecution, to the exclusion of other classes having responsibility for the care and attendance of race horses. We assume that Appellant is referring to the "absolute insurer" rule, and base our response on that premise.
The "absolute insurer" rule is set forth in the Louisiana Administrative Code at LAC 35:1735. It provides that "[t]he trainer... shall be responsible for and be the absolute insurer of the condition of the horses he enters regardless of the actions of third parties. Trainers ... are presumed to know the rules of the Commission." LAC 35:1735. The State chemist's *1035 report is "prima facie evidence that [a prohibited substance] has been administered to the horse. [It] shall also be taken as prima facie evidence that the owner and/or trainer and/or groom has been negligent in handling of the horse." LAC 35:1729. See also, Dulaney v. Louisiana State Racing Commission, 527 So.2d 507, 510 (La.App. 4th Cir.1988)(citing, Laborde v. Louisiana State Racing Commission, 506 So.2d 634 (La.App. 4th Cir.1987)).
In Owens v. Louisiana State Racing Commission, 466 So.2d 764 (La.App. 4th Cir.1985), this Court rejected an argument remarkable similar to Appellant's herein. We held that
[t]he absolute insurer rule ... does not violate Due Process because the rule is reasonably related to the government interests sought to be advanced by the ruleto insure fair, safe races, to protect the wagering public and to preserve the public's confidence in the integrity of the racing industry.
Owens, 466 So.2d 764. See also, Arrington v. Louisiana State Racing Commission, 482 So.2d 200, 201 (La.App. 4th Cir.1986) (citing, Owens, 466 So.2d 764; LSA-R.S. 4:141; Louisiana Rules of Racing, Preface and Forward (1983)).
In Arrington, 482 So.2d 200, we explicitly upheld our prior ruling in Owens. The horse racing industry is especially susceptible to fraud and corruption. Furthermore, the strong public interest in preventing such fraud and corruption justifies close regulation of the industry. The trainer is best able to guarantee the condition of the horse he races. Therefore, strict regulation of horse trainers is reasonable. Id. at 201.
Notwithstanding any of the above, it must be kept in mind that the Racing Commission functions as a civil administrative body. Id. (citations omitted). Its proceedings are not equivalent to criminal trials, and persons appearing before the Commission "[are] not entitled to every constitutional right afforded defendants in criminal trials." Id. When a trainer applies for a license with the Commission, he voluntarily subjects himself to terms and conditions such as the absolute insurer rule, which might not be appropriate in other situations. Id. For all these reasons, we must reject Appellant's constitutional argument as well.
Accordingly, the judgment of the district court is affirmed.
AFFIRMED.