# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-540 consolidated with  14-541,  14-542,  14-543

JOHN DARREL SOILEAU
VERSUS
LOUISIANA STATE RACING COMMISSION

consolidated with

ALONZA LOYA
VERSUS
LOUISIANA STATE RACING COMMISSION

consolidated with

ALVIN SMITH
VERSUS
LOUISIANA STATE RACING COMMISSION

consolidated with

MICHAEL H. TAYLOR
VERSUS
LOUISIANA STATE RACING COMMISSION

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. C-2012-4442 CW C-2012-4443 CW 2012-4444
CW 2012-4445
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge,  John D. Saunders,
and Billy Howard Ezell, Judges.

**AFFIRMED.**

**David Michael Hayes**
**Attorney at Law**
**P. O. Box 953**
**Natchitoches, LA 71457**
**(318) 357-8400**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **John Darrel Soileau**
    **Alonza Loya**
    **Michael H. Taylor**
    **Alvin Smith**

**Donald G. Kelly**
**Attorney at Law**
**137 St. Denis Street**
**Natchitoches, LA 71458-0756**
**(318) 352-2353**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Alvin Smith**
    **John Darrel Soileau**
    **Michael H. Taylor**
    **Alonza Loya**

**Thomas Taylor Townsend**
**Kelly & Townsend**
**P. O. Box 756**
**Natchitoches,, LA 71458-0756**
**(318) 352-2353**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Michael H. Taylor**
    **Alvin Smith**
    **Alonza Loya**
    **John Darrel Soileau**

**Rhea P. Loney**
**Assistant Attorney General**
**320 N. Carrollton, Suite 2-B**
**New Orleans, LA 70119**
**(504) 483-4000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Louisiana State Racing Commission**

**SAUNDERS, Judge.**

This is an appeal of the trial court upholding the licensure suspension of four horse trainers by the Louisiana State Racing Commission (LSRC) for administering dermorphin to race horses. The trainers contend that the trial court was in error because the hearing before the LSRC was defective and the trial court failed to recognize and correct these deficiencies.

**FACTS AND PROCEDURAL HISTORY:**

Appellants, John Darrel Soileau, Michael Heath Taylor, Alonzo Loya, and Alvin Smith, Jr., are racing horse trainers. Between May and June of 2012, each Appellant was running at least one horse in the Delta Downs high-stakes prize races. Pursuant to the LSRC's rules, urine and plasma samples were collected from each horse.

Appellants trained horses whose samples tested positive for dermophin. As such, Stewards from Delta Downs held a hearing for each Appellant, where each received a penalty of $1,000.00 and a six-month suspension, the maximum the Stewards could impose. These cases were then sent to the LSRC.

The LSRC heard Appellants' cases during a two-day hearing. Subsequently, Appellants Taylor and Loya were each fined $10,000.00, and their licenses were suspended for five years. Appellant Soileau was fined $20,000.00, and his license was suspended for ten years because two of his horses tested positive for dermorphin. Finally, Appellant Smith, Jr. was fined $20,000.00, and his license was suspended ten years for only one violation because his case had the aggravating circumstance of his having prior occurrences of suspensions and fines due to administering improper substances to his race horses.

Appellants then filed petitions with the Fourteenth Judicial District Court, where their cases were eventually consolidated. After briefing and a hearing, the

trial court rendered a judgment affirming the periods of suspension for each Appellant, but vacated the fines and remanded the case for that issue.

Thereafter, Appellants filed this appeal now before us. In this appeal, Appellants allege five assignments of error.

**ASSIGNMENTS OF ERROR:**

1.      The district court erred in its finding that the LSRC did not abuse its discretion in excluding Appellants' exhibits.

2.      The district court erred in failing to find that the State had established a chain of custody from Dr. Barker to the University of California – Davis and throughout the process while being performed in California.

3.      The district trial court erred in finding that the provisions of *Daubert* and *Foret* were met by the LSRC in allowing the introduction of the dermorphin test and splits.

4.      The district court erred in its finding that the LSRC denied Appellants their right to due process.

5.      The district court erred in affirming the excessive suspensions levied by the LSRC.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Appellants contend that the district court erred in its finding that the LSRC did not abuse its discretion in excluding their exhibits. We find no merit to this contention.

"Judicial review is a multifaceted function involving several catagories: statutory or constitutional review, procedural review, substantive review, factual review, and "fact finding." *Multi-Care, Inc. v. State, Dept. of Health & Hospitals*,

2

00-2001, p.3 (La.App. 1 Cir. 11/9/01), 804 So.2d 673, 674. The Louisiana Administrative Procedure Act, La.R.S. 49:964( G), provides:

> [t]he court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the statutory authority of the agency;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Affected by other error of law;
> >
> > (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> >
> > (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

Given La.R.S. 49:964 (G)(6), the standard of review for this court is that of manifest error for any factual findings by the trial court and for any credibility determinations made by the LSRC. *Id.* However, if the error alleged does not question any factual finding or credibility determination or if we are simply to determine whether an error of law occurred, neither the trial court nor the LSRC is entitled to any deference.

In their first assignment of error, Appellants contend that the LSRC abused its discretion in excluding certain exhibits. Appellants describe the purpose of

3

entering those exhibits into evidence as to "accurately explain the history of the Dermorphin issue" and to provide "context and history for Dr. Hatahet's testimony and for the Court."

The following exchange took place during Dr. Hatahet's testimony while he was being questioned before the LSRC:

Q     [W]ere these documents used to assist you in the formation of your opinions and conclusions that are going to be offered here today to some extent?

A     They are not necessary, let's put it this way.  I did not rely on them that much.  I would have made my opinion - - the same opinion without them.

The chairman of the LSRC ruled that these exhibits were not relevant and excluded them after considerable debate on their admissibility.  After the chairman made this ruling, Appellants' counsel examined Dr. Hatahet in a proffer wherein he discussed these exhibits.  This entire proffer was conducted before the members of the LSRC, i.e. the adjudicators of the hearing cast with the responsibility to make any credibility determinations.  In it, Dr. Hatahet iterated that some exhibits raised the question of whether any valid test for dermorphin in horses existed.  During the proffer, when the state's counsel objected to the LSRC hearing the testimony, the Chairman of the LSRC did not have the members of the LSRC leave the room or tell them to ignore the testimony, rather, he simply told them, "you don't have to listen to this."

Further, in reading the transcript, there are instances where members of the LSRC actually asked Dr. Hatahet questions about some of the evidence that the chairman ruled was to be excluded.  Thus, it is clear that the adjudicators cast with making credibility determinations, the members of the LSRC, had full knowledge

4

of the content of this evidence through hearing Dr. Hatahet's testimony, regardless of its status as excluded.

Accordingly, we cannot say that Appellants were harmed in any fashion by the Chairman's technical exclusion of the exhibits. Dr. Hatahet indicated that the admission of the excluded evidence was not necessary for him to reach his opinion. Further, he discussed the excluded evidence before and with the members of the LSRC and the instruction by the chairman to the members of the LSRC can be interpreted to indicate that the LSRC members could decide whether to give the evidence any weight. As such, we find that Appellants' assignment of error number one is without merit.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In the second assignment of error, Appellants Soileau and Taylor, assert that the district court erred in finding that the State had established a chain of custody from Dr. Barker to the University of California – Davis and throughout the process while being performed in California. We disagree.

We note that this assignment deals with a contention that the chain of custody was not proven after Appellants Soileau and Taylor exercised their right to have the samples taken from their respective horses split and tested. Thus, it does not pertain to Appellants Loya and Smith, Jr.

Appellants Soileau and Taylor allege that the chain of custody was not proven "from Dr. Barker to the University of California – Davis and throughout the process while being performed in California." In reviewing the record, it is clear that the split samples sent to California were never in the possession of Dr. Barker. The labels attached to the mailing of the split samples are exhibits entered into the record. They indicate that the split samples were sent directly from the

5

LSRC on Delta Downs Drive in Vinton, LA, to the University of California –
Davis. Thus, the allegation that the chain of custody was not properly proven from
Dr. Barker to California is misguided.

Further, both Appellants Soileau and Taylor signed "hold harmless"
agreements that contain the following language, "IT IS AGREED as follows:

. . . .

3. Trainer agrees that the results of the split sample(s) Laboratory can be
introduced as evidence in any hearing." Finally, the Louisiana Fourth Circuit, in
*Segura v. Louisiana Racing Commission*, 577 So.2d 1031, 1033 (La. App. 4 Cir.
1991) (initial alteration in original, thereafter, alterations added for full citations)
stated the following:

> The chain of custody rule is intended "to preserve the integrity of the
> evidence, i.e., to prevent [it] from being tampered with or . . . lost."
> *Bufkin* [*v. Mid-American Indemnity, Co.*, 528 So.2d 589, 592
> (La.App. 2 Cir.1988)]. *Accord*, *LaBella* [*v. La. State Racing Com'n*,
> 569 So.2d 58, 61 (La.App. 4 Cir.1990); *Schwab* [*v. Galuszka*, 463
> So.2d 737, 742 (La.App. 4 Cir.1985)]. This Court has determined that,
> in a civil case, twenty-four hour vigilance of the evidence is not
> required. *LaBella*, 569 So.2d at 61. What is essential is preserving the
> integrity of the evidence and protecting it from tampering and loss. *Id.*
> These factors must be established by a preponderance of the evidence.
> *Laborde v. Louisiana State Racing Commission*, 560 So.2d 594, 597
> (La.App. 4th Cir.1990).

We agree with our sister court that in a civil proceeding such as this one the
essential element to the chain of custody is "preserving the integrity of the
evidence." *Id.* Thus, it is incumbent upon the party seeking to have the evidence
excluded "to produce any positive evidence showing that the horse's specimen was
tampered with, lost, or not the one tested." *George v. Dept. of Fire*, 93-2421, p. 14
(La.App. 4 Cir. 5/17/94), 637 So.2d 1097, 1107. Here, Appellants Soileau and
Taylor have not even alleged such evidence exists.

6

Accordingly, we find that this assignment of error has no merit. Appellants Soileau and Taylor's assignment is misguided. Further, both signed agreements that the evidence they seek to have excluded could be introduced at any hearing and neither has produced any positive evidence that the split samples were lacking in integrity.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Appellants next contend that the trial court erred in finding that the provisions of *Daubert* and *Foret* were met by the LSRC in allowing the introduction of the dermorphin test and splits. While we agree that Appellants likely should have been given the requested *Daubert* hearing, we find that the denial of those hearings under the particular circumstances of this case do not warrant reversal.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if: scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." La.Code Evid. art. 702. In *State v. Brannon*, 07-431, pp. 8-9 (La.App. 3 Cir. 12/5/07), 971 So.2d 511, 517-18, *writ denied*, 07-2465 (La. 5/9/08), 980 So.2d 689, we explained how to determine the admissibility of an expert's testimony:

> In *State v. Foret*, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *State v. Chauvin*, 02-1188 (La.5/20/03), 846 So.2d 697. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be

7

applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 592–594, 113 S.Ct. 2786. In *Foret*, supra, the court adopted these observations as a helpful guide for our lower courts in considering this difficult issue. *Id*. Thus, Louisiana has adopted Daubert's requirement that in order for technical or scientific expert testimony to be admissible under La.[Code Evid. art.] 702, the scientific evidence must rise to a threshold level of reliability. Daubert's general "gatekeeping" applies not only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1171, [] (1999); *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181 (La.2/29/00), 755 So.2d 226. The trial court may consider one or more of the four *Daubert* factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. *Id*. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. *Kumho*, *supra* at 526 U.S. at 142, 119 S.Ct. 1167.

*State v. Allen*, 41,548, pp. 11-13 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244, 1254-55 [, *writ denied*, 07-530 (La.12/7/07), 969 So.2d 619].

Here, in reviewing the transcript of the proceedings before the LSRC, the ultimate issue of the Appellants' alleged violations turned on whether the members of the LSRC believed that the test used by Dr. Barker was valid. Thus, while this court would have preferred that Appellants have been granted their requested *Daubert* hearing, the actual hearing before the LSRC essentially served the same function as a *Daubert* hearing. The main issue at the hearing before the LSRC was the validity of Dr. Barker's dermorphin test. Appellants were afforded the opportunity to present expert testimony before the LSRC that opined that Dr. Barker's procedures used in his demorphin test were not peer reviewed or

8

published, had no known error rate, and was not accepted or rejected in the scientific community through the lengthy testimony of Dr. Hatahet. We do note, however, that Dr. Hatahet did not disagree with Dr. Barker's results or methodology. Rather, he only pointed out to the LSRC that Dr. Barker's test was not an accepted test by generally accepted scientific principles due its early stage in devolvement.

Given the substance of the hearing, the LSRC had a choice between finding that Dr. Barker's test was valid, and, therefore, finding that Appellants violated La.R.S. 4:150 or finding that Dr. Barker's test was invalid and, therefore, finding that there was no evidence of any wrongdoing by Appellants. Clearly, they chose the former. As such, the LSRC was heard the arguments and evidence both for and against the validity of Dr. Barker's test and its decision to give credence of one view over the others was not manifestly erroneous. Further, in contemplating the entirety of the circumstances, we cannot say that the chairman's denial of Appellant's requested *Daubert* hearing resulted in any prejudice against them. The adjudication before the LSRC, in effect, contained a *Daubert* hearing therein. Accordingly, we find that this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER FOUR:

Fourth, Appellants aver that the district court erred in its finding that the LSRC denied Appellants their right to due process. We disagree.

Louisiana Revised Statutes 49:955 states:

> A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.

> B. The notice shall include:

> (1) A statement of the time, place, and nature of the hearing;

9

(2) A statement of the legal authority and jurisdiction under which the hearing is to be held;

(3) A reference to the particular sections of the statutes and rules involved;

(4) A short and plain statement of the matters asserted.

If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.

C. Opportunity shall be afforded all parties to respond and present evidence on all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts.

D. Unless precluded by law, informal disposition may be made of any case of adjudication by stipulation, agreed settlement, consent order, or default.

E. The record in a case of adjudication shall include:

(1) All pleadings, motions, intermediate rulings;

(2) Evidence received or considered or a resumé thereof if not transcribed;

(3) A statement of matters officially noticed except matters so obvious that statement of them would serve no useful purpose;

(4) Offers of proof, objections, and rulings thereon;

(5) Proposed findings and exceptions;

(6) Any decision, opinion, or report by the officer presiding at the hearing.

F. The agency shall make a full transcript of all proceedings before it when the statute governing it requires it, and, in the absence of such requirement, shall, at the request of any party or person, have prepared and furnish him with a copy of the transcript or any part thereof upon payment of the cost thereof unless the governing statute or constitution provides that it shall be furnished without cost.

G. Findings of fact shall be based exclusively on the evidence and on matters officially noticed.

In the case before us, the trial court, functioning as an appellate court, stated that "there is no merit whatsoever to the due process issue." Appellants contend that the LSRC failed to give them time to obtain necessary discovery to prepare for the hearing and acted with such haste that their counsel could not property examine witnesses and present evidence at the hearing. According to the trial court, Appellants' description of the events were incongruent with the "proceedings as conveyed through the transcript[.]"

After having reviewed the transcript, we are unable to find manifest error by the trial court. Appellants were afforded notice of the allegations against them with time to prepare a defense by procuring expert witnesses. Further, all discovery propounded by Appellants were answered prior to the hearing. Appellants produced expert witnesses to contradict the expert witnesses against them. Those experts were able to voice their views in a nearly 750 page transcript over two days. Finally, Appellants were allowed to cross-examine all witnesses against them. Given these facts, we cannot say that the trial court was erroneous in its finding that Appellants' due process concerns were without merit.

**ASSIGNMENT OF ERROR NUMBER FIVE:**

Finally, Appellants assert that the district court erred in affirming the excessive suspensions levied by the LSRC. We find no error by the trial court.

Louisiana Revised Statutes 4:255(A) states, "The commission may impose upon any licensee listed in R.S. 4:169 a fine not exceeding ten thousand dollars and may suspend a licensee indefinitely, or both. Any commission action taken herein shall be consistent with the provisions of this Part." A trainer is specifically listed in La.R.S. 4:169, and Appellants were all trainers. Thus, La.R.S. 4:255(A) applies to Appellants. Further, La.Admin.Code tit. 35, § I.1796(B)(1)

11

provides guidelines for suspension and fines for a Class I violation of "suspension of license for a period of not less than one year and not more than five years."

The trial court vacated the fines in excess of $10,000.00, but upheld the suspensions as they were less than indefinite and fell within the guidelines promulgated by the LSRC when there was an absence of mitigating or aggravating circumstances. The trial court noted that Appellant Soileau's suspension was for a total of ten years as he was found guilty of a Class I violation for two separate horses. Thereafter, the trial court found no abuse of discretion by the LSRC in making Appellant Soileau's suspension consecutive rather than concurrent because it involved two separate incidents.

Appellants argue in brief that the suspensions were the maximum they could have received under the guidelines and, as such, were unduly harsh. We find no merit to this argument. Our reading of the statues is consistent with the trial court's. The LSRC guidelines call for suspension of licenses between one and five years for a Class I violation when no mitigating or aggravating circumstances are present. Here, the record contains no mitigating circumstances for any Appellants, and we find no error by the trial court in upholding the LSRC's suspensions.

## CONCLUSION:

Appellants, John Darrell Soileau, Michael Heath Taylor, Alonzo Loya, and Alvin Smith, Jr., raised four assignments of error. Further, Appellants Soileau and Taylor raised an additional assignment of error.

We find no merit to any of the assignments of error raised by Appellants. Accordingly, we affirm the trial court's judgment upholding the ruling of the Louisiana State Racing Commission. Costs of these proceedings are assessed to John Darrell Soileau, Michael Heath Taylor, Alonzo Loya, and Alvin Smith, Jr.

**AFFIRMED.**