CULPEPPER, Judge.
This is a companion case to Smith v. American Casualty Company of Reading, Pa., La.App., 236 So.2d 240, in which a separate opinion is rendered by us this date. These are suits for damages arising *244 out of the same automobile accident. Plaintiff, Gloria Fairfax, was a passenger in an automobile driven by Eligh Smith and insured by Members Mutual Insurance Company. The Smith vehicle collided, during hours of darkness, with the rear of an unlighted pickup truck owned by Sub-Sea Equipment & Supply Company, driven by its employee, John R. Schertler, and insured by American Casualty Company of Reading, Pa.
Gloria D. Fairfax sued Johnny R. Scher-tler, driver of the Sub-Sea truck, its insurer, American Casualty Company of Reading, Pa., and Members Mutual Insurance Company, liability insurer for Eligh Smith. American answered and filed an alternative third party demand against Eligh Smith for contribution. Schertler was never served and is not before the court.
In the companion case, Eligh Smith sued American Casualty Company of Reading, Pa., insurer of the Sub-Sea truck. In that suit, Members Mutual Insurance Company filed an intervention on its subrogation for automobile property damage paid to Smith.
The district judge found both drivers negligent. Judgment was rendered in favor of Mrs. Fairfax against the insurers of both vehicles for the total sum of $21,843.-29, the judgment against Members Mutual being limited to its coverage of $10,000. Judgment was also granted in favor of American Casualty Company of Reading, Pa., on its third party demand against Eligh Smith, in the sum of $10,921.64. Members Mutual and Eligh Smith appealed.
The scene of the accident is on Interstate Highway 10 near Vinton, Louisiana. This is a four-lane highway running generally east and west. The speed limit is 70 miles per hour. The accident occurred at about 10:00 p. m. on July 26, 1968. The weather was cloudy and it was very dark.
Eligh Smith, with Mrs. Fairfax as a passenger, was driving in the right-hand lane for east-bound traffic at a speed of about 65 miles per hour. For several miles he had been following another vehicle being driven by one Lodie Adams in the same lane and at about the same speed. Adams testified he suddenly saw a slow moving east-bound flatbed pickup truck, without taillights or headlights (the truck later determined to be owned by Sub-Sea Equipment & Supply Company) in the right-hand lane ahead of him. He switched on his bright lights, swerved to the left and was able to miss the truck by a few inches but said “I don’t think I could miss it again.”
Smith testified he saw Adams switch his lights on high beam and swerve into the left-hand lane. He then also switched his lights on high beam and suddenly saw the flatbed of the truck ahead of him. Smith applied his brakes but was unable to swerve to his left because of other eastbound traffic in the left-hand lane. He ran into the rear of the pickup truck. Both Smith and Mrs. Fairfax sustained bodily injuries.
American Casualty, the insurer of the pickup truck, concedes its driver was negligent for proceeding slowly along the highway without any taillights. The principal question posed by these appeals is whether Smith was also negligent for failing to keep a proper lookout and failing to see the flatbed truck in time to avoid the accident.
The district court’s finding that Smith was negligent is based on these factors: (1) Adams was able to miss the unlighted pickup truck, so Smith should also. (2) Adams and his wife testified that after they had successfully passed the pickup truck, Adams turned on his emergency blinker lights, slowed down and “weaved” his automobile from side to side in an effort to warn Smith of the unlighted truck. (3) The truck was proceeding at a speed of 30 to 35 miles per hour and Smith at 65 miles per hour, which means that they were closing at only the rate of 30 miles *245 per hour, which should have given Smith time to see the truck and avoid the accident. (4) Mrs. Adams testified that from the time they swerved until the collision was approximately 25 seconds, which indicates Smith had plenty of time.
We are unable to agree with the trial judge that Smith should have seen the unlighted truck in time to avoid the collision. It is true that Adams saw the truck in time to swerve and avoid striking it. However, Adams testified it was “A little bit too close for comfort. I don’t think I could miss it again.” Furthermore, Smith had been following Adams for a considerable distance and had no opportunity to see the unlighted truck until Adams swerved. It is apparent Smith was keeping a lookout ahead since he saw Adams switch his lights and swerve. Smith was looking ahead • as best he could. He simply was unable to see the unlighted truck until it was too late.
As to Adams’ attempt to warn Smith by blinking his lights, Smith testified he did not see any such signal. However, even if he had seen such a signal, he could only have guessed as to its meaning and it would not have improved his opportunity to see the unlighted truck.
We give little weight to the testimony of Mrs. Adams that 25 seconds elapsed between the time they swerved and the time of the collision. She had been asleep on the back seat and must have been startled and alarmed by the sudden swerving of the car. At their speed of 65 miles an hour, the Adams and Smith vehicles would have gone a distance of about one-half mile in 25 seconds. Mrs. Adams’ estimate of the time which elapsed is obviously too long.
There is little dispute as to the law. The insurer of the truck relies on the general rule that a motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid an accident, and he must drive at such a speed that he can stop within the range of his vision, Lewis v. Quebedeaux, La.App., 134 So.2d 93 (3rd Cir.1961) and the cases cited therein.
Smith’s insurer relies on the exception to the above stated general rule. This exception exonerates a night motorist who strikes an unexpected and unusual obstruction, which he had no reason to anticipate, Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909. Included in the progeny of the Vowell case are several decisions particularly applicable here, which hold that a stopped or slowly moving unlighted vehicle is an unusual obstruction, which the following motorist has no reason to anticipate, Stelly v. Fidelity & Casualty Company of New York, La.App., 201 So.2d 24 (3rd Cir.1967) writ of certio-rari refused; Shively v. Hare, La.App., 189 So.2d 12 (1st Cir.1966); Driscoll v. Allstate Insurance Company, La.App., 223 So.2d 689 (4th Cir.1969); Miller v. Kinney, La.App., 213 So.2d 124 (3rd Cir.1968).
The present case clearly falls within the exception to the assured clear distance rule. We find Smith was free of negligence. The accident was caused solely by the negligence of the driver of the unlighted truck.
For the reasons assigned, the judgment appealed is amended and recast to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Gloria D. Fairfax, and against the defendant, American Casualty Company of Reading, Pa., in the sum of $21,843.29, together with legal interest thereon from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of the third party defendant, Eligh Smith, and against the third party plaintiff, American Casualty Company of Reading, Pa., rejecting the third party demand.
All costs in the lower court, as well as the costs of this appeal, are assessed *246 against the defendant, American Casualty Company of Reading, Pa.
Affirmed, as amended and recast.
HOOD, J., dissents and assigns written reasons.