609 So.2d 299 (1992)
Robin EVANS, Individually and as Natural Tutrix of Her Minor Children, Heather Otterstatter and Holly Otterstatter, Plaintiffs,
v.
Elizabeth M. OLINDE, Steven Clinton Otterstatter, Continental Insurance Company and State Farm Mutual Automobile Insurance Company, Defendants-Appellant, Appellees.
No. 91-546.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
Rehearing Denied December 22, 1992.
*301 Jack H. Tobias, New Orleans, for plaintiff/appellant-Stevens.
Voorhies & Labbe, Michael Adley, Lafayette, for plaintiff/appellee-Elizabeth.
Mangham, Hardy, Boris F. Navratil, Baton Rouge, for defendant/appellee-Continental Ins.
Before STOKER, KNOLL and MARCANTEL[*], JJ.
STOKER, Judge.
Defendant-appellant Steven Otterstatter appeals a judgment holding defendant-appellee Elizabeth Olinde free from fault for an automobile accident. The accident occurred on I-10 west over the Atchafalaya swamp at about 7:10 p.m. on October 21, 1983. The drivers involved in the accident, Otterstatter and Olinde, presented conflicting versions of how the accident occurred.
Otterstatter contends he was driving down the highway with his lights on when *302 Olinde rear-ended his car, pushing it into the guardrail. His car then bounced off of the guardrail, flipped upside down and slid 180 feet. Otterstatter's two young daughters were thrown from the car and seriously injured.
Olinde states that, as she was driving down the highway, Otterstatter's car suddenly loomed before her as a large beige object. Its lights were not on. She braked immediately but was unable to avoid hitting it. According to Olinde, Otterstatter must have already struck the guardrail inadvertently, which knocked the battery out of his car and caused his car lights to go out. Since his car lights were not on, she did not see his car until it was too late to avoid hitting it.
Robin Evans, the mother and custodian of Otterstatter's two daughters, filed this suit against Olinde, Otterstatter, Continental Insurance Co. (Olinde's liability insurer) and State Farm Mutual Automobile Insurance Co. (Otterstatter's liability insurer and Evans's uninsured motorist insurer) to recover damages for her daughters' injuries. Their claims were eventually settled. Otterstatter filed a cross-claim against Olinde and Continental Insurance for emotional and psychological damages resulting from the accident. After a jury trial on the merits of Otterstatter's claim, the jury held that Olinde was free from fault for the accident and, therefore, did not reach the issue of Otterstatter's damages.
Otterstatter appeals and assigns numerous errors. We affirm.

Fault
Otterstatter contends on appeal that the jury erred in finding Olinde free from fault for the accident. He argues that Olinde failed to overcome the jurisprudential presumption of fault on the part of a following vehicle which rear-ends a vehicle in front of it. He also argues that the sudden emergency doctrine does not excuse failure to keep a proper lookout, following too close and driving at an excessive speed.
It is well settled in the jurisprudence that the following motorist is presumed negligent if he collides with the rear of a leading vehicle, as it is generally assumed that he has failed in his responsibility to maintain a sharp lookout to events taking place before him or that he was following at an insufficient distance from the preceding vehicle to allow him to safely stop under normal conditions. The burden rests with the following motorist to exonerate himself of negligence. Fontenot v. Boehm, 512 So.2d 1192 (La.App. 1st Cir. 1987); Smiley v. Ellis, 307 So.2d 150 (La. App. 1st Cir.1974), writ refused, 310 So.2d 643 (La.1975); Welch v. Thomas, 263 So.2d 427 (La.App. 1st Cir.), writs refused, 262 La. 1132, 1137, 1143, 266 So.2d 434, 436, 438 (1972).
However, when a following motorist is suddenly confronted with an unanticipated hazard created by a preceding vehicle which the following motorist could not reasonably avoid and a collision ensues, the following driver should be found free from fault. It has been often held that a stopped or slowly moving unlighted vehicle upon the highway at night is an unusual obstruction which the following motorist has no reason to anticipate. Shroyer v. Grush, 555 So.2d 534 (La.App. 4th Cir. 1989), writs denied, 559 So.2d 139, 140 (La. 1990); Gordon v. Commercial Union Ins. Co., 503 So.2d 190 (La.App. 4th Cir.), writ denied, 506 So.2d 1227 (La.1987); Bordelon v. State, Dept. of Highways, 253 So.2d 677 (La.App. 1st Cir.), writ refused, 260 La. 18, 254 So.2d 619 (1971); Fairfax v. American Cas. Co. of Reading, Pa., 236 So.2d 243 (La.App. 3d Cir.), writ denied, 256 La. 856, 239 So.2d 359 (1970).
The rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen. It does not apply to lower the standard of care required of motorists before the emergency occurs. Dick v. Phillips, 253 La. 366, 218 So.2d 299 (1969); Fontenot v. Boehm, supra; Breaux v. Roy Young, Inc., 397 So.2d 1384 (La.App. 3d Cir.1981); *303 Dudley v. State Farm Mut. Auto. Ins. Co., 255 So.2d 462 (La.App. 1st Cir.1971).
The jury apparently found the evidence and testimony presented by Olinde more credible than that offered by Otterstatter. Olinde's version of the accident, that she rear-ended Otterstatter's unlighted vehicle, is supported by the testimony of Dr. Adams, an expert in electrical engineering, which showed that Otterstatter's vehicle lights were already out when Olinde's car collided with his. Under the standard of appellate review set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989), and Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990), we find that the jury's findings of fact are not manifestly erroneous.
We also find the jury was not clearly wrong in apparently applying the sudden emergency doctrine to absolve Olinde of fault. Otterstatter's slowly moving, unlighted vehicle constituted an unexpected hazard which Olinde had no reason to anticipate. Olinde's accident reconstruction expert, Gene Moody, testified that Otterstatter's vehicle was travelling at about 25 m.p.h. and Olinde's was travelling at about 55 m.p.h. when they collided. The night was clear and the road was straight. Olinde was clearly not driving at an unreasonable rate of speed. Olinde successfully overcame the presumption of negligence applied to her as a following motorist involved in a rear-end collision.
Finally, we hold the trial judge did not err in overruling Otterstatter's posttrial motions for a new trial, a judgment notwithstanding the verdict and a rehearing.

DAMAGES
Otterstatter also argues on appeal that the jury erred in failing to award him damages. Since Olinde was not at fault for the accident, the jury did not err in not awarding damages to Otterstatter and against Olinde.

EXPERT TESTIMONY
Next, Otterstatter contends the opinion of accident reconstruction expert Gene Moody was erroneous because it was based on evidence which had been altered. J.B. Olinde, the appellee's father, and Leo Brassett, the appellee's insurance agent and a personal friend of J.B. Olinde, inspected the scene of the accident and removed automobile parts and debris, thus allegedly altering the evidence. However, appellant's argument fails to take into account the fact that the accident scene was altered when the wrecker service swept the debris and glass out of the road and when subsequent traffic pushed the debris around the road. Olinde and Brassett investigated an accident scene which had already been altered. Also, Gene Moody testified that an accident reconstruction expert realizes that debris will not later be found in the road exactly where it landed during the accident due to it being swept aside. Thus, he based his opinion on all of the circumstances of the accident and evidence taken together. Appellant's argument simply lacks merit.

Hostile Witness
Otterstatter further argues that the trial judge erred in failing to declare Leo Brassett a hostile witness subject to cross-examination by him. Brassett is a personal friend of appellee's father, is appellee's insurance agent, and is a vice-president of appellee's automobile insurance company (Continental Insurance Co.). Continental Insurance Co. is also a defendant-appellee in this case. Although we find that Brassett was sufficiently identified in interest with the defendants in the cross-claim to merit cross-examination by Otterstatter under La.C.E. art. 611(B), we see no prejudice resulting from the trial judge's failure to find Brassett a hostile witness since Otterstatter was permitted to cross-examine Brassett anyway. Therefore, this assignment of error is moot.

Robin Evans
Otterstatter alleges that the testimony of his ex-wife, Robin Evans, was perjured. However, since Evans's testimony was irrelevant to the issue of fault in the accident, the question of whether she committed perjury is moot.

*304 Excited Utterance
Next, Otterstatter contends the trial court erred in permitting appellee Olinde to present hearsay testimony under the excited utterance exception to the hearsay rule, the purpose of which was allegedly to prejudice and inflame the jury.
The testimony by Olinde concerned a statement by a truck driver which she allegedly overheard soon after the accident had occurred. The essence of the statement was that the truck driver was watching Otterstatter remove beer cans from his vehicle and throw them over the bridge railing. The statement was admissible as an excited utterance, made while under the stress of excitement caused by the accident, about an event relating to the accident. See La.C.E. art. 803(2) and art. 803(1), Authors' Note (5). The statement was relevant as to the circumstances of and a possible cause of the accident. The trial judge did not err in admitting the statement.

Motion in Limine
Otterstatter asserts that the trial judge erred in reversing a prior order granting his motion in limine to exclude expert testimony about the headlights and taillights on Otterstatter's car.
Three days after the accident, on Monday morning, Leo Brassett and Gene Moody investigated Otterstatter's vehicle in the lot where it was impounded. They removed the head and taillights from Otterstatter's car without first filing a discovery request and without any notice to or authorization from Otterstatter or the court. The lights were then sent to Olinde's expert in electrical engineering, Dr. Adams, for testing to discover whether Otterstatter's lights were on or off when Olinde rear-ended his car. After Dr. Adams concluded his tests, Olinde offered to return the lights to Otterstatter.
Otterstatter filed a motion in limine to exclude any evidence concerning Dr. Adams's testing of the lights. The trial judge granted the motion on the grounds that the chain of custody could not be proven sufficiently to identify the lights as those which were on Otterstatter's car and that it was fundamentally unfair to exclude Otterstatter from the testing conducted by Dr. Adams and then offer to return the lights to him afterward.
Olinde subsequently called Dr. Adams as a witness, despite the trial judge's order excluding his testimony. Upon objection by Otterstatter, a bench conference which was not transcribed for the record was conducted before the jury. We assume the trial judge reversed his earlier order and decided to allow Dr. Adams to testify as to the tests on the car lights, since Dr. Adams proceeded to testify after the bench conference was concluded. There are no reasons or ruling by the judge in the record or in the court's minutes.
As we see it, the issue presented is not one of admissibility but one of weight or credibility to be accorded the evidence. However, we will initially note that admissibility is a question of law to be determined by the court. The court should follow the preponderance of evidence standard when factual questions must be decided to determine the admissibility of evidence. LSA-C.E. art. 104 A and D and the comments thereunder and McLoughlin v. Fireman's Fund Ins. Co., 582 So.2d 203, 207 (La.App. 1st Cir.), writ denied, 586 So.2d 536 (La.1991).
Cases in the jurisprudence often state it is a fundamental law of evidence that an article or substance which is introduced as demonstrative evidence, or to which a witness is asked to testify, must be sufficiently identified as the one involved in the occurrence in question. The foundation must be laid which connects the specimen with its source, showing that it was properly taken by an authorized person, properly labeled and preserved, properly transported for analysis, and properly tested. Bufkin v. Mid-American Indem. Co., 528 So.2d 589 (La.App.2d Cir.1988); Dubois v. State, through Dept. of Public Safety, 466 So.2d 1381 (La.App. 3d Cir.1985); Swanson v. Estate of Augusta, 403 So.2d 118 (La. App. 4th Cir.), writ denied, 407 So.2d 732 (La.1981); Pearce v. Gunter, 238 So.2d 534 *305 (La.App. 3d Cir.), writ refused, 256 La. 888, 239 So.2d 543 (1970).
The purpose of the chain of custody rule is to assure the integrity of the evidence, i.e. to prevent the evidence from being tampered with or from being lost. Labella v. La. State Racing Com'n., 569 So.2d 58 (La.App. 4th Cir.1990), writ denied, 572 So.2d 67 (La.1991); Bufkin v. Mid-American Indem. Co., supra; Schwab v. Galuszka, 463 So.2d 737 (La. App. 4th Cir.), writ denied, 464 So.2d 1386 (La.), cert. denied, 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985). At least in a civil case, the chain of custody rule does not require a twenty-four hour vigilance of the evidence. It requires that its integrity be preserved, and that it be protected from being tampered with or lost. Labella v. La. State Racing Com'n., supra. See also, Reed v. Seacoast Products, Inc., 458 So.2d 971 (La.App. 3d Cir.1984); Harris v. Ryan, 355 So.2d 286 (La.App. 4th Cir.1978).
Otterstatter points out that Leo Brassett and Gene Moody removed the lights from the car without authority and sent them for testing without notice to Otterstatter or the court. The testing was conducted without giving Otterstatter the opportunity to be present. Otterstatter argues that he has no way of knowing whether the lights tested really came from his car, whether Dr. Adams received the lights in the same condition they were in before Brassett and Moody handled them, or whether they were offered to him, after Dr. Adams's tests, in the same condition they were in before the tests. The lights could have been tampered with, inadvertently damaged en route, or altered by Dr. Adams's tests.
Both Brassett and Moody admitted to removing the lights from Otterstatter's car, an action which the trial judge characterized as a theft since they lacked authority to do so. No testimony was given as to the subsequent handling of the lights, i.e. labeling and transportation to Dr. Adams. Dr. Adams testified that he did not know, of his own knowledge, that the lights came from Otterstatter's car. The lights themselves were not offered into evidence at trial.
We must decide whether the trial court abused its wide discretion in changing its pretrial ruling regarding the admissibility of the evidence in question and allowing the evidence to be introduced at trial. In doing so we bear in mind the distinction between admissibility of the evidence to be ruled on by the trial court and the weight and credibility to be accorded the evidence by the jury as the trier of fact.
This case is a civil case. Proof of connexity between Otterstatter's car and the laboratory samples examined by Dr. Adams is sufficient if proven by a preponderance of evidence. These principles and distinctions are clearly enunciated in McLoughlin v. Fireman's Fund Ins. Co., supra, which involved a civil case in which the admissibility of a blood alcohol test of a deceased driver was at issue. In McLoughlin the court of appeal observed:
"Stanley S. Chigoy, a medical technologist, testified that TPL dispatched a courier who during his routine day would pick up specimens (blood samples) at Dr. Maxwell's office, or a place specified by him, and the courier would transport the specimen back to TPL for testing. The courier in the instant case was not identified and did not testify. However, this is not necessarily fatal to the admissibility of the evidence. It is gaps in possession of the sample as opposed to lack of evidence pertaining to the taking of the sample and its analysis which result in different language by the courts as to foundation evidence necessary to introduce a sample. Gaps in a chain of custody usually affect the weight of the evidence, not its admissibility, and an unbroken chain of custody is not essential for the admissibility of the evidence as long as the foundation evidence as a whole shows it is more probable than not that the evidence tested was that which was originally taken. State v. Ray, 521 So.2d 582 (La.App. 1st Cir.), writ denied, 525 So.2d 1055 (La.1988)."
Leo Brassett testified at trial that he removed two or three bulbs and portions of a red lens from a car and handed them to *306 Gene Moody. It is apparent from Brassett's complete testimony that he believed the questioned items were taken from Otterstatter's car and that Brassett accompanied Moody to view the car because Brassett had identified and located the car.
Gene Moody was qualified as an accident reconstruction expert. Moody testified he and Brassett removed the bulbs, removed the headlights and the taillights, and Moody took those items to Leonard Adams. He testified he wanted Adams to determine whether the lights were burning at the time of the accident. Moody also testified he received a later report from Adams and made his analysis and report. In Moody's opinion, Otterstatter's car bounced off the left rail and ran into the right lane, traveling without lights into the right lane at about 25 miles per hour at an angle. As an expert, Moody had a right to rely on the opinion of the expert, Adams, concerning the lights.
In our view, the preponderance of the evidence establishes that the items examined by Adams were the same items removed from Otterstatter's car by Brassett and Moody. We find nothing in the record to seriously question the connexity between the items examined and the items removed and delivered by Moody to Adams.
Further, in our opinion, the cross-examination of Adams goes more to the weight of the evidence than to its admissibility. It was the jury's duty of accept or reject Moody's testimony concerning the source of the samples. Also, the failure to produce the questioned items into evidence goes to the weight of Adams's testimony.
The trial judge has much discretion in the conduct and order of the trial so as to make the interrogation of witnesses and presentation of evidence effective for the ascertainment of the truth. LSA-C.E. art. 611(A). Also, LSA-C.C.P. art. 1631 and art. 1632. We find the trial judge did not abuse his much discretion, after viewing the demeanors and listening to the testimony of Leo Brassett and Gene Moody, in reversing his prior order and permitting Dr. Adams to testify as to the results of the tests he conducted on Otterstatter's car lights.
This evidence that Otterstatter was driving at night without lights overcame the presumption that Olinde was at fault, as a following motorist, in rear-ending a preceding vehicle.

OTHER ASSIGNMENTS
Finally, Otterstatter has alleged several other assignments of error, most of which complain of alleged bias against Otterstatter shown by the trial judge in his conduct of the trial. We have thoroughly reviewed the record and found no merit to these assignments. We note that Otterstatter's motions to recuse the trial judge and for mistrial, filed after a judgment on the merits was rendered, were untimely. We further note that Otterstatter's motions for a new trial and for a judgment notwithstanding the verdict were not filed late and so were not, apparently, summarily denied on the grounds that they were filed untimely. Therefore, there is no need for us to consider the effect of the Soldiers' and Sailors' Civil Relief Act upon the delays for filing posttrial motions.

JUDGMENT
For the reasons given, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, Steven C. Otterstatter.
AFFIRMED.
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by the appointment of the Louisiana Supreme Court as Judge Pro Tempore.