# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-605

**REGINALD HOWARD**

**VERSUS**

**GEICO CASUALTY COMPANY, ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, DOCKET NO. C-92593
HONORABLE DESIREE D. DYESS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**LEDRICKA J. THIERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

**Jared Dunahoe**
**Dunahoe Law Firm**
**P.O. Box 607**
**Natchitoches, LA 71458**
**(318) 352-1999**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    Reginald Howard

**J. Morgan Passman**
**Law Office of J. Morgan Passman**
**201 Johnston St., Suite 402**
**Alexandria, LA 71301**
**(318) 445-6384**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    GEICO Casualty Company and Harsh Patel

**THIERRY, Judge.**

Reginald Howard appeals the trial court's judgment in favor of Harsh Patel and GEICO Casualty Company that found Mr. Howard one hundred percent at fault in causing the subject accident between he and Mr. Patel. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 14, 2020, an automobile accident occurred between a GMC Yukon driven by Plaintiff, Reginald Howard, and a 2015 Lexus driven by Defendant, Harsh Patel. On that day, Howard was traveling westbound on University Avenue in Natchitoches, Louisiana. In the pertinent area in question, University Avenue has one westbound lane of travel, an eastbound lane of travel and a center turn lane. Howard was in the westbound lane and was preparing to turn right onto Martin Luther King Drive. According to Mr. Howard, due to a deterioration in the westbound lane and the presence of a light pole making a right turn a tight procedure, he veered his car slightly into the center turn lane before making the right turn. After veering into the center turn lane and beginning to turn right, a collision occurred between Mr. Howard and Mr. Patel, who was previously traveling behind Mr. Howard in the westbound lane of traffic. Mr. Howard and Mr. Patel differed significantly in describing the events preceding the collision.

Mr. Howard maintained he veered "slightly" into the center turn lane and had activated his right turn signal on his vehicle. He testified only approximately ten percent of his vehicle crossed into the center turn lane. Conversely, Mr. Patel maintained Mr. Howard crossed fully into the center turn lane which made him believe the Howard vehicle was going to turn left at some point. Under the belief that Mr. Howard was going to turn left, Mr. Patel stated he proceeded straight, when suddenly Mr. Howard attempted to turn right onto Martin Luther King Drive,

directly in front of Patels' vehicle, at which point the collision was unavoidable. Mr. Patel maintained Mr. Howard did not activate his turn signal. There were no other eyewitnesses to the accident. The accident report of the responding officer was not entered into evidence nor was any accident reconstructionist study performed.

Officer Thurmon Miller, Jr. of the Natchitoches Police Department was dispatched to the scene of the accident. He interviewed both drivers and prepared an accident report, which he testified to at trial. While at trial, Officer Miller noted the effect the presence of the light pole had at the intersection in question:

> Q. All right. And is it common for you to observe motorist[s] when making that turn to slightly veer to their left before making a right turn onto . . . to Martin Luther King?
>
> A. They shouldn't, but yes sir, it's very, very common.
>
> Q. And is that because of the light pole we see in P-1 and the road deterioration on MLK we see on P-2.
>
> A. That's exactly why.

Officer Miller also testified he noted in his accident report that Mr. Patel's listed condition was inattentive and Mr. Howard's was normal. On cross-examination, Officer Miller acknowledged that he recognized at the scene that Mr. Howard was a friend of his father.

The damage to Mr. Howard's vehicle was to the middle to back of the passenger side and not to the rear of the vehicle. The damage to Mr. Patel's vehicle was to the driver's side of the front of the vehicle.

Following the accident, Howard was transported to the Natchitoches Regional Medical Center by ambulance complaining of injuries to his ribs, back and neck. He was then subsequently treated by Dr. Jonathan Karnes for approximately three months due to the injuries he suffered as a result of the accident. As a result, Mr.

Howard filed a personal injury lawsuit against Mr. Patel and his automobile insurance provider, GEICO Casualty Company (GEICO).

Mr. Howard maintained Mr. Patel was solely at fault in causing the subject accident. He based this on the contention that Mr. Patel failed to comply with the standard of care required of a following motorist. Conversely, Mr. Patel and GEICO argued Mr. Howard was solely responsible for the accident for failing to comply with the standard of care required of a right-turning motorist. Following a bench trial where both parties testified as to their respective version of events, the trial court took the matter under advisement.

On February 17, 2022, the trial court rendered judgment finding in favor of Mr. Patel and GEICO, finding Mr. Howard solely at fault in causing the subject accident. In its reasons for judgment, the trial court noted that the two contested issues at trial were (1) how far into the center turning lane did Mr. Howard's vehicle proceed; and (2) did Mr. Howard activate his right-turn signal? In extensive reasons for judgment, the trial court found that the damage to Mr. Howard's vehicle wholly contradicted his version of the facts that his vehicle barely entered the center turning lane. Consequently, the trial court held that Mr. Patel was not a following motorist as set forth in La.R.S. 32:81(A), instead holding Mr. Howard was a right-turning motorist and subject to the standard of care required by La.R.S. 32:101(A)(1). The trial court further found Mr. Howard did not comply with the statutory duties found in La.R.S. 32:101(a)(1) "to ascertain that both the approach for the turn and the turn itself shall be made as close as practicable to the right hand curb or edge of the roadway." The trial court further found that Mr. Howard did not activate his right-turn signal prior to making the right turn. As a result, the trial court ruled that Mr. Howard was one hundred percent (100%) at fault in causing the subject accident.

On March 2, 2022, Mr. Howard filed a motion for a new trial which was denied by the trial court on March 4, 2022. This appeal followed, wherein Mr. Howard asserts that "the trial court err[ed] when it found Howard 100% at fault when he was struck by a following motorist while attempting to make a right turn."

### ANALYSIS

The fact finder is vested with much discretion in its allocation of fault. An appellate court should only disturb the fact finder's allocation when it is clearly wrong or manifestly erroneous. *Hebert v. Rapides Par. Police Jury*, 06-2001, 06-2164 (La. 4/11/07), 974 So.2d 635. Where two or more permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880, 883 (La.1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

Initially, we address Mr. Howard's arguments that Mr. Patel was a following motorist, and as such owed the statutory duty set forth in La.R.S. 32:81(A), which provides:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.

As Mr. Howard notes, a presumption of negligence arises when a following motorist is involved in a rear-end collision. This is because a following motorist who collides with a leading vehicle is presumed to have breached the duties set forth in La.R.S. 32:81(A). *Brewer v. J.B. Hunt Transport, Inc.*, 09-1408, 09-1428 (La. 3/16/10), 35 So.3d 230. The following motorist may rebut the presumption of fault "by demonstrating that he or she had [the] car under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances[.]"

4

*Leblanc v. Bouzon*, 14-1041, p. 3 (La.App. 3 Cir. 3/4/15), 159 So.3d 1144, 1146 (alteration in original) (quoting *Garcia v. Stalsby*, 11-350, p. 5 (La.App. 3 Cir. 12/14/11), 78 So.3d 873, 877, *writ denied*, 12-422 (La. 4/9/12), 85 So.3d 703). Additionally, if the following motorist establishes that he was suddenly confronted with an unanticipated hazard created by the lead vehicle that could not reasonably be avoided (a sudden emergency), the following driver should be found free from fault. *Louisiana Farm Bureau Mut. Ins. Co. v. Regal Ins. Co.*, 01-1446 (La.App. 3 Cir. 3/6/02), 809 So.2d 1280; *Evans v. Olinde*, 609 So.2d 299 (La.App. 3 Cir. 1992).

In this case, the trial court found that Mr. Patel was not a "following motorist" and that no presumption of negligence attached. In its reasons for judgment, the trial court noted that for the following motorist presumption of negligence to apply, two requirements must exist: (1) a following driver and (2) a rear end collision. The trial court held neither requirement was present in the instant case. The trial court gave the following reasons for this conclusion:

> Mr. [Howard] was driving a 2008 GMC Yukon and for Mr. Patel, a 2015 Lexus LS; both are SUVs, a car breed larger than a sedan. Based on Mr. Howard's testimony, the point of impact was between the front and rear passenger-side door and that only "10 percent" or at least the two drivers-side tires of his vehicle remained on the edge of the dividing line between the center left-turn lane and the far right travel lane or may have slightly crossed over that line. This court finds the evidence does not support this claim. Given the facts as recounted by Mr. Howard, Mr. Patel had to have been directly behind him because (1) most of the Howard vehicle would have remained in the westbound lane, and (2) the westbound lane clearly does not afford to vehicles to travel side-by side. It follows, *a priori*, that when Mr. Howard attempted his right turn, the impact would have had to occur in the *rear* of his vehicle given the breadth of each vehicle and the westbound lane. Here, the rear-end and the passenger rear corner of the Howard vehicle was unscathed. From the evidence, Mr. Howard's vehicle had to be *significantly farther* into the center turning lane, or perhaps exclusively so, in order for the impact to occur in the center of his vehicle given the impossibility of the vehicles to travel side by side in the same lane. Buttressing this conclusion is the point of impact on Mr. Patel's vehicle; the damage was limited to the driver-side front end corner immediately surrounding the headlight. If the majority of Mr. Howard's vehicle remained in the westbound lane when he made the turn, not only would

impact Mr. Howard's rear bumper, but also a greater swath of Mr. Patel's front bumper. The indisputable fact that Mr. Patel's vehicle was damaged at the area surrounding the driver-side headlight and Mr. Howard's dead-center of the passenger side clearly bespeaks that Mr. Howard was not turning right *from* the westbound lane, but turning right *into* the westbound lane. This coincides with Mr. Patel's testimony that he did not "slam on his breaks" – he saw no need to as Mr. Howard was driving in the center turning lane, and Mr. Patel had no reasonable expectation that Mr. Howard would return to Mr. Patel's lane of travel. Additionally, had "90 percent" of Mr. Howard's vehicle remained in the westbound lane, for the Patel vehicle to impact the Howard vehicle dead-center of the passenger side, Mr. Patel would have had to have been straddling the curb and grassy area alongside University Parkway at the time of impact. Had that been the case, the Patel vehicle would have been violently stopped by the subject utility pole. This court is hard pressed to reach any conclusion other than Mr. Howard was significantly within, or exclusively in, the center left-turn lane when he executed the right turn on to MLK Drive. Therefore, not only *was* there no rear-end collision, but there *could not* have been one given the constellation of (1) the size and breadth of the subject vehicles, (2) the width of the westbound lane, the point of impact and resulting physical damage, and the geometry of the subject intersection. Mr. Patel was no longer a "following driver" once Mr. Howard left the westbound lane.

We find the record amply supports the trial court's finding that Mr. Patel was no longer a "following motorist" once Mr. Howard's vehicle substantially entered the center turning lane.[1] At that point, Mr. Howard became a right-turning motorist, the duties of which are set forth by La.R.S. 32:101. It states in pertinent part:

> A. The driver of a vehicle intending to turn at an intersection shall proceed as follows:
>
>> (1) Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.

---

[1] In brief, Mr. Howard argues the trial court "essentially tried to reconstruct the crash based on the photograph of the damage to Howard's vehicle and the location of the damage on Patel's vehicle." Mr. Howard maintains it was "highly improper for the Trial Court to essentially act as an expert and try to reconstruct the crash." He further contends the "Trial Court's analysis illustrates why Patel should have hired an accident reconstructionist to rebut the presumption of fault as a following motorist." Interestingly, Mr. Howard offers no reason as to why he chose not to hire an accident reconstructionist, particularly as it was clear that a disputed issue at trial would be whether Mr. Howard left the westbound lane of travel and entered the center turn lane, thus placing in dispute the issue of whether Patel would be deemed a following motorist. With neither side providing an accident reconstructionist report, the trial court used the evidence at hand to attempt to resolve the dispute.

As set forth above, the trial court found the evidence established Mr. Howard made his right turn from within the center turning lane and proceeded directly across the westbound lane of University Parkway directly into the path of Mr. Patel. This clearly breaches the duty owed of a right-turning motorist to make the right turn "as close as practicable to the right-hand curb or edge of the roadway."

Mr. Howard argued below that it was common practice for drivers turning right onto MLK Drive from University to veer left due to the presence of the utility pole and the substandard road conditions near the edge of the westbound lane. He points to the testimony of Officer Miller, who acknowledged it was "common" for motorists to "slightly veer to their left before making a right turn onto" MLK Drive. Officer Miller also testified that although this was a common practice, it was something motorists "shouldn't" do. In its written reasons for judgment, the trial court noted this "common practice by local motorists that one seeking to turn right on to [MLK] Drive from the westbound lane of University Parkway to make a wider than usual right turn." However, as the trial court noted, this does not absolve a right-turning motorist from making the right turn "as close as practicable to the right-hand curb or edge of the roadway." As noted above, the damage to the vehicles clearly indicated Mr. Howard began his right turn from well within, if not completely within the entirety of the center turning lane. Thus, Mr. Howard failed to make the right turn "as close as practicable to the right-hand curb or edge of the roadway" as required by La.R.S. 32:101(A)(1).

The trial court further made a finding of fact that Mr. Howard "failed to activate his right turning signal." In making this determination, the trial court acknowledged the fact that Mr. Howard misrepresented his testimony on the issue of how far he entered the center turning lane, which led the court to "greatly discount" Mr. Howard's testimony on the issue of whether he activated his blinker.

7

"[T]he trial court is afforded great discretion where conflict exists in testimony in making reasonable evaluations of credibility of the witness and reasonable inferences based on the evidence." *Rozas v. Progressive Ins. Co.*, 08-308, p. 4 (La.App. 3 Cir. 10/1/08), 997 So.2d 563, 566 (citing *Leal v. Dubois*, 00-1285 (La. 10/13/00), 769 So.2d 1182). Based on our review of the record, we find no abuse of the trial court's discretion in finding Mr. Howard did not activate his right-turn signal.

In conclusion, we find no manifest error in the trial court's determination that Mr. Howard was at fault in breaching his duties as a right-turning motorist and turning suddenly in front of Mr. Patel's vehicle, making the collision unavoidable. We find no merit in Mr. Howard's argument that the trial court erred in failing to apply the presumption of fault attributable to a rear-ending motorist. The trial court's conclusion that Mr. Howard was one hundred percent (100%) at fault in causing the accident is reasonably supported by the record and objective evidence and will not be disturbed here on appeal. Having found no merit to Mr. Howard's arguments concerning the trial court's allocation of fault, his arguments concerning any injury-related damages are rendered moot.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, Mr. Reginald Howard.

**AFFIRMED.**