|1WALTZER, Judge.
Fire Captain Joseph Recasner, a 15 year veteran of the New Orleans Fire Department, was selected for a random drug-screening on June 10,1992. He was ordered to undergo the drug screening at the Marine Medical Unit (MMU) on Tchoupitoulas Street in New Orleans. Captain Recasner tested positive for benzoylecgonine, a cocaine metabolite, and was placed on suspension July 16, 1992. Recasner had been appointed to the position of Fire Captain on January 27, 1991, and the appointment was made permanent January 26, 1992. He had successfully completed two prior drug screening tests prior to the test in question.
The Fire Department conducted two departmental hearings before their internal review board. At the first hearing, Captain Recasner had an opportunity to offer evidence and testimony in his behalf. The second proceeding was a pre-termination hearing. Recasner was found to be in violation of the city’s drug policy and was terminated from his employment effective August 6, 1992. Recasner appealed his termination and the matter was assigned to a hearing examiner who conducted the hearing on February 1, 1993. The hearing was reconvened on March 30, 1993 to hear an additional witness. The hearing examiner concluded that the testimony of the witnesses for the department was convincing and credible. He concluded that the department had proved its case by a preponderance of the evidence. On the other hand, the hearing examiner found the testimony of the appellant to be “disingenuous” and his explanation for not immediately challenging the collection procedures “feeble.” After reviewing the findings of the hearing examiner, the transcript and the evidence, the Civil Service Commission dismissed the appeal. Recasner then filed this appeal.
In his appeal the appellant argues the following: (1) the drug testing procedure violated chain of custody requirements when the urine sample was not sealed in his presence; (2) the drug testing procedure violated chain of custody requirements when MMU did not re-test appellant after he informed them that an unknown third party participated in the specimen collection process; (3) MMU violated federal standards |2when it did not freeze a sample of the appellant’s urine sample once the test result was determined to be positive and potentially subject to litigation; (4) MMU had a duty to inform the appellant of his right to have the positive sample tested by an independent facility which it failed to perform.
Because the appellant’s arguments (1) and (2) both concern chain of custody requirements, we will discuss them jointly. The chain of custody rule is intended to preserve the integrity of the evidence, and to protect it from tampering or loss. Segura v. Louisiana State Racing Commission, 577 So.2d 1031, 1033 (La.App. 4th Cir.1991). In a civil case, twenty-four hour vigilance is not required. LaBella v. Louisiana State Racing Commission, 569 So.2d 58, 61 (La.App. 4th Cir.1990), writ den. 572 So.2d 67 (La. 1991).
Captain Recasner testified that when he went to MMU for his drug screen, the chain of custody paperwork was begun by Maria Miller, an MMU employee. Because he was unable to provide a urine sample at that time, Ms. Miller gave him some water to drink and sent him into the waiting area. When he was ready to provide his specimen, another MMU employee, Robert Artus, went into the restroom with him to obtain the sample. Recasner alleged that there were several irregularities in the collection procedure: that the collector witnessing the collection of the sample was not the collector signing the chain of custody forms; that his urine sample was left unsealed in the lab area while he and Bob Artus walked to the waiting area; that he was advised to leave the laboratory before seeing his sample sealed and placed in the outer plastic bag with the chain of custody forms. Appellant explained that he had taken two earlier drug screening *1294 tests and the procedures at MMU were distinctly different. He testified, however, that he did not challenge the procedure or even ask the MMU personnel whether the sample should not be sealed in his presence.
Recasner testified that on the following day, at a previously scheduled meeting of the Executive Board of the International Association of Black Firefighters with Fire Department officials, the new drug screening procedures were explained. Recasner then mentioned what transpired at his drug screening and was told by Capt. Delatte to put the |3information in writing. According to Recasner, that is what prompted him to write the special report of June 13, 1992 to Capt. Delatte outlining the irregularities that he witnessed.
Laboratory Specialists, Incorporated (LSI) is certified by the National Institute on Drug Abuse to conduct drug screenings. It operates under guidelines published by Health and Human Services Department appearing in the Federal Register, April 11, 1988. Dr. Gary Wimbish, the Laboratory Director for LSI, has overall responsibility for the laboratory operations, including the collection of specimens at their facility, the receipt of specimens at their facility, the entire testing process, and supervision of personnel. Dr. W'imbish testified extensively as to the chain of custody procedures established by LSI to receive, identify, and track urine samples taken for testing. Dr. Wimbish also testified that there was nothing to indicate that the seals had been broken or the specimen tampered with. Unacceptable samples are assigned a special code number. The lab’s records indicate that everything regarding appellant’s specimen was acceptable.
Maria Miller, an L.P.N. who is also the collection officer for MMU, testified that she had no personal recollection of Capt. Recas-ner or her collection of this particular sample. She verified her signature on the chain of custody forms as the officer who collected the urine specimen from the appellant. She also testified about her usual collection procedures and stated that they were not breached in this case. She stated that she normally gets all of the forms signed prior to collecting the specimen and that she has never been assisted in the collection process by a third party and never by Bob Artus. She stated that if the donor is unable to provide a sample at the moment, the paperwork is set aside until the donor is ready. However, if the person who started the procedure cannot continue, the paperwork is destroyed and a new chain of custody process with new forms is begun.
Chief Darryl Delatte of the New Orleans Fire Department testified that he received a special report dated June 13,1992 from Capt. Recasner describing irregularities in the processing of the chain of custody forms surrounding the collection of |4Recasner’s urine specimen during his drug screening. Chief Delatte testified that he conducted an investigation, but found the allegations to be unsubstantiated. He also testified that there were two departmental hearings conducted prior to the proceeding before the Civil Service Hearing Officer.
The hearing was reconvened on March 30, 1993 to hear the testimony of Robert Artus, an X-ray technician and collection official for MMU. Mr. Artus testified that he had no independent recollection of collecting a urine specimen from appellant. He also was not able to identify the appellant at the hearing. Artus testified that he had not completed a drug screening begun by Ms. Miller. He also indicated that they were trained and it was his habit to begin new chain of custody paperwork if he had to complete a screening begun by another employee.
When reviewing findings of fact made by the Commission, the appellate court must apply the clearly wrong or manifestly erroneous standard of review. Walters v. Department of Police of the City of New Orleans, 454 So.2d 106, 113 (La.1984); George v. Department of Fire, 637 So.2d 1097 (La.App. 4th Cir.1994). When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993). Thus, even where the appellate court would have made other inferences or conclusions based upon the facts presented, the decision of the Commission should not be disturbed unless it was *1295 arbitrary, capricious, or an abuse of discretion. George, at 1101. The hearing officer, after hearing the testimony of Capt. Recas-ner, Dr. Wimbish, Mrs. Miller, Capt. Delatte, and Mr. Artus accepted the testimony of the departmental witnesses as more credible and found that the department had carried its burden of proof. The Commission’s resolution of the conflicting testimony between the appellant and the other witnesses was not clearly wrong.
Appellant’s allegation that the positive urine sample has not been frozen is unsubstantiated. Dr. Wimbish testified that the specimen is in permanent storage. Appellant has produced no evidence to refute this testimony and further, has never demanded the production of the specimen in order to have it tested by an independent Islab. Appellant seems to have raised the issues of the permanent storage and independent testing of his urine for the first time in his brief. Thus, Reeasner’s case is in contrast with the recently decided case where a police officer’s request to have his urine sample re-tested by an independent laboratory was denied. Sciortino v. Department of Police, 643 So.2d 841 (La.App. 4th Cir.1994). Sciortino made a prompt request for his urine sample, but through a series of delays, the sample had deteriorated by the time the appointing authority agreed to its release. Under those circumstances, this court found that the officer was denied fundamental due process and reversed the Civil Service Commission’s decision to terminate.
Likewise, appellant’s fourth allegation accusing the laboratory of failing to inform him that he had a right to have an independent laboratory test the sample has no merit. The regulations do not mandate such a duty. Appellant had at least two hearings with the fire department’s Internal Board of Review. He was represented by counsel at one or both of those hearings and apparently never sought an independent test. Appellant has failed to take advantage of any other opportunity to retest the sample. Appellant has not attempted to show that this sample is not his even though that is clearly the thrust of his charges that he left the lab without seeing his urine sample sealed.[1]
For all of the foregoing reasons, the judgment of the Civil Service Commission is AFFIRMED.

AFFIRMED.

. Dr. Wimbish testified that there are now procedures which became available in 1993 to determine whether a specimen is a DNA match. However, there was apparently no reliable procedure available in June 1992 for determining a DNA match.