liWOODARD, Judge.
This is a civil service dispute. Police Officer Albert S. Ned (Ned), a member of the Lake Charles City Police Department (Department), tested positive for marijuana in a drug screen test ordered by his superiors. He also tested negative for marijuana at another laboratory the same day of the ordered drug screen. By letter dated July 8, 1994, the City of Lake Charles (City) terminated him. He appealed to the Lake Charles Municipal Fire and Police Civil Service Board (Board). The Board affirmed the City’s decision. With new counsel, Ned appealed to the district court which ordered a new hearing since his original counsel was not licensed in Louisiana. A second Board proceeding was held and Ned’s termination was upheld. Ned again appealed the Board’s hearing to the district court which affirmed the Board’s decision. Ned is appealing the district court’s decision. We affirm.
_JFACTS
The City hired Ned as a police officer on July 28, 1992. By letter dated July 8, 1994, signed by Mayor Willie Mount and Chief of Police, Sam Ivey, (Ivey), the City terminated him, effective July 11, 1994, from his position at the Department after he tested positive for marijuana in a drug screen ordered by his superiors within the Department.
The events leading to his termination began on June 28, 1994, at 2:00 a.m., when he called the police to report a neighbor in his apartment complex, Ms. Kerry Riggs, a part-time employee of the Department, for excessive noise. When the police arrived at Kerry’s apartment, he claimed to have overheard her tell the officers that she worked for the City and would be reporting Ned to Ivey in the morning.
*579 He reported for work at 5:25 a.m. He related the incident to his supervisor, Lieutenant Louis Hebert (Hebert), and Sergeant Karl Gillard (Gillard) of Internal Affairs, who told Ned that he had done the right thing by letting the officers handle the situation. Also, he informed the two officers that he had taken medication to help him sleep.
Later that same day, he was called to Chief Ivey’s office. Ivey wanted to discuss the neighbor’s complaint and to let him know that he wanted all the city employees to be “one big happy family.” Ned claimed that he was afraid of losing his job and upset because Ivey would not listen to his side of the story. He got so upset in Ivey’s office that he began crying. Ivey thought his behavior was erratic, that his speech patterns were peculiar, and that Ned appeared to be hyperventilating. During the meeting with Ivey, he told Ivey that he had taken medication to help him sleep the night before. Ivey dismissed Ned from his office.
Then Ned went directly to Hebert and Gillard to discuss the situation. He was so visibly upset that Hebert thought he had lost his job. He revealed to the two officers that he had taped the conversation between himself and Ivey and began playing the taped conversation. Hebert left the room and walked across the hall to Ivey’s office. Twenty minutes later he returned with Major Frank Landry, Lieutenant Ronald Lewis, and Sergeant Gillard. Landry thought that Ned’s behavior was strange and deviant from the norm. Landry told him that he was under internal investigation and read him the Police Officer’s Bill of Rights while Ned read them to himself. Upon reading the part regarding the right to have an attorney present, Ned told them that he did want ^counsel. He testified, however, that his request was denied, while Landry, on the other hand, denied that he had made the request.
Landry ordered him to take a urine screen. Gillard escorted Ned to The Pathology Laboratory where Ned submitted a urine sample at approximately 3:00 p.m. Ned handed the sample to the laboratory technician and observed the technician place a band around the sample bottle. Gillard and Ned left the laboratory and returned to the station. Ned requested that he be allowed to have a second test done that same day, but it was denied. He was placed on desk duty for the rest of his shift.
The test results from The Pathology Laboratory were positive for marijuana. Ned was placed on emergency leave that same day, pending confirmation testing. The sample was sent to the Nichols Institute of Substance Abuse Laboratories in San Diego, California. On July 8, 1994, this lab confirmed the original test results.
The same day of testing at The Pathology Laboratory, Ned called his personal physician, Dr. Melvin Morris, and an attorney. He had a second urine test done at Lake Charles Memorial Hospital at approximately 8:45 p.m. This health-care facility also performed regular urine testing for police officers. On July 1, 1994, Dr. Morris informed Ned that Memorial’s test was negative for marijuana. This negative result was also confirmed by an outside laboratory, the Louisiana Reference Laboratory in Baton Rouge, Louisiana, which reported its findings to Ned on July 14, 1994.
Ned testified that the first urine sample was not properly sealed in his presence, despite a consent form he signed at The Pathology Laboratory on the day of the test. His testimony is the only evidence to indicate any possible tampering of his urine sample. Testimony from employees of The Pathology Laboratory and the Nichols Institute in California showed no irregularities in the chain of custody. After his verbal termination, Ned informed the City that he had received a negative test the same day of his positive test result. Nevertheless, on July 8, 1994, the City of Lake Charles terminated Ned, by letter, for failing a drug screen.
In addition to Ivey’s claim that Ned acted in a suspicious manner on June 28, 1994, there had been rumors in the Department that he was using illegal drugs. Rumors were circulating that he was using marijuana. And, some of the rumors involved his use of steroids prior to becoming a police officer, as he had been a competitive body builder. Although Ivey denied that rumors contributed to his decision to order Ned to be tested, *580 testimony from other officers established that part kof the reason he was tested was because of the rumors. Sergeant Mike Johnson (Johnson), who was on the Board, had started the rumors of steroid use. When Ned confronted him about it, he apologized. This conversation was taped with Johnson’s permission. A transcript of the conversation was proffered by Ned after his motion to recuse Johnson at the second Board proceeding was denied. Johnson remained a member of the Board that heard Ned’s appeal.
Prior to his ordered drug screening, the department had never taken disciplinary actions against him. On the contrary, he had received several citations and letters of commendation from the City.
When Ned was presented with the termination letter on July 11, 1994, he refused to sign it. On July 14, 1994, his attorney appealed the City’s action to the Board. Ned released this attorney and retained the services of an attorney from San Marcos, Texas, who represented him at the appeal hearing before the Board on September 16, 1994. The Board upheld the decision of the City. On October 6, 1994, his present attorney enrolled as his counsel and filed a request for rehearing and a notice of appeal. The request for rehearing was heard by the Board on November 11,1994 and denied.
The appeal to the district court was heard on December 4, 1995. The district court found that the proceedings before the Board were void because the attorney who had represented him was not licensed in Louisiana. The court found that the Board was not made aware of this fact, even though the City knew this was true. The district court ordered a new trial. The Board complied on March 29, 1996. Again, it upheld the decision of the City to terminate Ned.
The Board found that the following Departmental Rules had been violated by Ned:
1.Departmental Rule Article 2180.0, which states:
Use of control [sic] substances, narcotic or hallucinogens by any member is prohibited, except where prescribed in the care and treatment of a member by a licensed medical practitioner. Use of a control [sic] substance, narcotic or hallucinogen, whether prescribed, or not, shall not be a defense to violations to any provisions of this code.
2.Departmental Rule Article 2010.0, which states:
|A- member shall conform to, and abide by, the laws of the United States, the State of Louisiana, all other states of the United States and subdivisions thereof. A conviction for the violation of any law shall be prima facie evidence of violating this section.
Ned appealed the Board’s second decision to the district court. It issued its Written Reasons and Order on October 5, 1997. It found no manifest error on the part of the Board and affirmed his termination. It did not discuss in its reasons the negative drug screen of Ned, taken hours after the positive drug screen. The judgment was signed that same day. Ned appeals.
ASSIGNMENTS OF ERROR
The trial court erred:
1. When it failed to find that Ned had presented sufficient evidence to show that the ruling of the Board was manifest error.
2. In finding that the Department had reasonable suspicion to order a drug screen.
3. In ruling that sufficient information was presented to support proper chain of custody.
4. By failing to find a violation of Ned’s right to have an attorney present as allowed by the Police Officers’ Bill of Rights.
5. In failing to find manifest error in the Board’s decision not to recuse Mike Johnson.
6. In ruling that the City acted in good faith and for just cause.
7. By ruling that it was unnecessary for the City to show that Ned’s alleged conduct impaired the efficiency of the Department.
*581 LAW
As we affirm the Board’s findings, we will discuss only the first two of Ned’s assignments of error. We will address the second one first. It is unnecessary to discuss the five remaining assignments of error, as we find they are without merit.
^Reasonable Suspicion to Order a Drug Screen?
La.R.S. 49:1015(A) states that a public employer may require, as a condition of continued employment, urine samples from employees to test for the presence of drugs under circumstances which result in a reasonable suspicion that drugs are being used by the employee. Pursuant to this statutory authority, the City of Lake Charles adopted a drag policy for its employees. Section 5.0 of the drug policy, entitled “TESTING SITUATIONS,” states in part in subparagraph 5.1:
The City reserves the right, in certain circumstances, to require employees to submit to medical or physical examinations and tests as a condition of continued employment, including, but not necessarily limited to, urine drug tests or other examinations to determine the presence of any illegal or unauthorized drugs, alcohol or other substances prohibited by this policy. These unannounced tests may be utilized under the following circumstances:
A. Testing shall be used when there is a reasonable suspicion that an employee’s behavior, appearance, performance, error in judgment, or unsafe actions while working is related to substance abuse. Said information shall be reviewed by the Director of Personnel or a designee appointed by the Mayor and approved as to reasonable cause prior to a test order.
The next question is did Ned’s behavior in the presence of Ivey and Landry on the afternoon of June 28, 1994 establish a reasonable suspicion in their minds that Ned should be ordered to take the test?
Ned claims that Chief Ivey ordered him to submit a urine sample without reasonable suspicion that he had used drugs. Both Ivey and Landry testified that Ned’s behavior in their presence seemed erratic and abnormal and that his eyes appeared glassy. Considering that both of these men were experienced police officials, their observations of Ned provided more than enough reasonable suspicion to warrant ordering Ned to take a drug screen.
We find that Chief Ivey had the regulatory authority, because of his position and the drug policy adopted by the City, to order Ned to submit to a drag screen. This assignment of error is without merit.
(Conflicting Drug Screen Results and Manifest Error
In Shields v. City of Shreveport, 579 So.2d 961, 965 (La.1991) the supreme court stated:
The scope of review of a reviewing court in civil service appeals is limited to whether the board’s decision was made in good faith for cause. Courts look only to the evidence presented before the board and will review this evidence in light of the presumption that the board found facts sufficient to afford a legal basis for its decision. McIntosh v. Monroe Municipal Fire and Police Civil Service Board, 389 So.2d 410, 413 (La.App. 2d Cir.1980), writ denied, 395 So.2d 1363 (La.1981); La.R.S. 33:2501(E)(3).
In deciding whether to affirm a Board’s factual findings, an appellate court should apply the clearly wrong or manifest error rale. Recasner v. Department of Fire, 94-0815 (La.App. 4 Cir. 11/17/94); 645 So.2d 1291; Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Board had before it two conflicting views of the evidence of Ned’s possible use of marijuana. It had the evidence of The Pathology Laboratory test results taken by Ned at 3:00 p.m., on June 28, 1994, in which Ned tested positive for marijuana and which was confirmed by a subsequent test of his sample at another laboratory. The chain of custody for this test appears intact.
It had the evidence of the Lake Charles Memorial Hospital test at 8:45 p.m, which was a “medically requested test” by a doctor. This was unlike the first test, which was an *582 employer requested test. According to the testimony of the Director of Pathology and Radiology at the Lake Charles Memorial Hospital, the hospital’s procedures for identification of a medically requested sample are even more rigid than those for an employer requested sample because of the possible life threatening consequences to a patient for a misidentified sample. However, unlike the employer requested test, Ned was not observed giving a sample for the medically requested test in the laboratory bathroom which was negative and also confirmed by another laboratory.
When the Director of Pathology and Radiology at Lake Charles Memorial Hospital was asked if it were possible for a second urine screen done hours later to produce a different result, he testified that he did not believe the human body could ^dispose of marijuana in such a short time span of hours. A human body needs three to five days to purge itself of marijuana.
No other evidence established Ned used marijuana and he denied using marijuana since becoming a policeman.
Obviously, the Board accepted The Pathology Laboratory’s test results and chose not to believe Ned. The Board’s resolution of the two conflicting views of the testimony concerning the two tests was not manifestly erroneous or clearly wrong. Therefore, the City terminated him in good faith with cause. The trial court properly upheld the Board’s decision to support the City.
This assignment of error is without merit.
CONCLUSION
The Board did not err in upholding the City’s decision to terminate Ned. The district court properly affirmed the Board’s decision. The trial court’s decision is affirmed. Ned is cast with the costs of this appeal.
AFFIRMED.